ROCKY MOUNTAIN ELEVATOR CO., Respondent, v. BAMMEL et al., Defendants; MITZEL, Appellant.

(No. 7,763.)

(Submitted March 14, 1938. Decided March 26, 1938.)

[81 Pac. (2d) 673.]

*Mr. J. B. Gergen* and *Mr. G. G. Harris,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Bert I. Packer* and *Messrs. Speer & Hoffman,* for Respondents Ed Bammel and T. J. Cheetham, submitted a brief; *Mr. Packer* and *Mr. Harvey B. Hoffman* argued the cause orally.

*Messrs. J. W. Freeman, J. P. Freeman* and *Ernest Abel,* for Respondent Rocky Mountain Elevator Company, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Teton county in an action by the Rocky Mountain Elevator Company against Ed Bammel, W. W. Mitzel and T. J. Cheetham and others, involving a certain quantity of grain stored in the

elevator of plaintiff, and claimed, in whole or in part, by each of the defendants. The essential and pertinent facts involved are substantially as follows:

In March, 1927, Mitzel contracted to sell a certain tract of land in Teton county to Bammel for an agreed price, to be paid from the proceeds of crops raised thereon. Half of the value of such crops produced from year to year was to be applied on the purchase price. Bammel farmed the land until June, 1934. At that time he telephoned Mitzel that he was ready to give up and relinquish the contract, and asked Mitzel to come out and see him. Mitzel visited the place on the 18th day of June, and had lunch with Bammel and his wife. It is clear that some kind of an agreement was there made for the termination of the contract. Both parties agreed to this fact; however, they differ widely as to the conditions under which the termination was to be effected.

Mitzel took a quitclaim deed, ready for execution, with him to the Bammel place. Bammel and his wife signed and delivered the deed to Mitzel. Mitzel explained that his reason for requiring the deed was that he desired to make arrangements with someone else to handle the land, and that he did not want any controversy with Bammel or anyone claiming through him under the contract. Both agreed that Mitzel had $240 coming to him from Bammel on account of a seed loan, and for money advanced for gas and taxes.

It appears that at this point in the negotiations Bammel stated, in effect, that he had no other means than the crop and that Mitzel would have to depend upon the crop then growing, for the $240. Mitzel stated that this was satisfactory to him, and that he would ''wipe the slate clean'' if there was no crop, but that he was to have the $240 if the proceeds of the crop were sufficient. It was also agreed that, in view of the fact that $104 of this $240 represented seed, Mitzel should file a seed lien against the crop for that amount. This was done on the same day.

Bammel's version, substantiated by his wife, was to the effect that Mitzel should have the $240 out of the crop and the quit-

claim deed, and that he, Bammel, should proceed to harvest the crop and deliver it to the elevator, and that all of the balance of the crop, other than that represented by the $240, was to be retained by him.

Mitzel's version was to the effect that he desired immediate possession of the land in order that he might do some summer-fallowing, and that he wished the quitclaim deed so as to terminate Bammel's possession of both land and crop and enable him to make a new deal with some third party. He claimed that he was to have complete control over the premises and over the growing crop and was to handle and distribute the wheat harvested, and, after taking half of the crop as per the original contract, he was to give Bammel the remaining half less the $240.

In any event, the quitclaim deed was given, the contract was cancelled, the lien for $104 was filed, all on the same day. It appears that the parties went to Fairfield and later to Chouteau, the county seat, where some of these matters were completed and where discussions occurred with some of the representatives of governmental agencies.

Later the crop developed better than was expected. When harvest time came, Bammel notified Mitzel, who lived at Great Falls, some miles distant, that he would begin harvesting on a certain day. Mitzel appeared on the scene and thereafter was constantly present when grain was delivered to the elevator. Previous to his arrival, however, two loads of grain were delivered to another elevator and the proceeds collected by Bammel —he claimed, for the purpose of obtaining money to conduct operations. One load was also delivered to a third elevator. This appears to have been in repayment, in part at least, for a loan of seed grain to Bammel by that elevator.

It was at the time that Mitzel appeared that the disagreement occurred. He asserted the right to handle and market the grain and later account to Bammel. Bammel asserted the right to all of the grain except enough to pay Mitzel the $240. Eight hundred forty-nine bushels of wheat were actually delivered to the plaintiff elevator company, but, through inadvertence and

error, storage tickets were made out for 394 bushels in excess of the actual amount delivered. It appears that scale tickets were made out for each load as delivered, and later storage tickets were made out for various amounts from the scale tickets, sometimes including several loads. In making storage tickets from the scale tickets the duplications occurred. The elevator man observed the error before Mitzel and Bammel had left the premises, and endeavored to obtain the return of the erroneous tickets; however, they refused to yield the tickets and held them until the trial. Tickets were not issued uniformly to any one person. Some were issued to Mitzel and Bammel and Cheetham, and some otherwise.

Cheetham held a chattel mortgage on Bammel's interest in one-half of the crop, that is, the half that he would have obtained under the original contract; but under Bammel's theory of the case, his right to the crop was not limited to the one-half, but was to be the original half plus the Mitzel half reduced by the $240 owed Mitzel.

The result of the mix-up was that the elevator company found itself confronted by divers interests and demands, not only for the wheat actually delivered, but for the 394 bushels for which erroneous tickets had been issued. For its own protection it instituted this action under the provisions of section 4095, Revised Codes, which is part of the Uniform Warehouse Receipts Act. The section in question reads as follows: "If more than one person claims the title or possession of the goods, the warehouseman may, either as a defense to an action brought against him for non-delivery of the goods, or as an original suit, whichever is appropriate, require all known claimants to interplead."

In its complaint the elevator company sought to obtain possession or cancellation of the erroneously issued tickets representing the 394 bushels over-issue, and to require the various claimants of the wheat, as parties defendant, to litigate their claims so that it could pay the real party in interest for the wheat and take up its storage tickets, less a storage charge as provided by law. Each of the defendants appeared, some by demurrer and

later by answer, but all finally answered and issues were joined. The cause was tried to the court without a jury.

In the course of the trial certain of the facts were agreed upon by all parties and stipulations made accordingly. The court made specific findings on these stipulated facts, as well as upon the facts that were controverted. On the main issue between Mitzel and Bammel as to the conditions under which the original contract was terminated, the court found that Bammel was indebted to Mitzel in the sum of $240, $104 of which was secured by the seed lien filed by mutual agreement of the parties; that Bammel was indebted to Cheetham in the sum of $1,824.15, secured by a chattel mortgage on one-half of the crop; that the total crop raised on the land in 1934 was 1,588 bushels and 30 pounds; that the plaintiff elevator company had issued a storage ticket by inadvertence and mistake for 394 bushels more than had been delivered to it; that 849 bushels of wheat were actually delivered to the elevator company, and that it had a prior lien against that amount of wheat for storage at the rate of one cent per bushel per month, or $254.70, at the time of the trial; that the elevator company was bound to pay into the court the sum of $1,061.25; that Cheetham and Mitzel were obligated to deliver up the storage tickets representing the wheat delivered, and that the elevator company was forever relieved of all other obligations in connection with such tickets.

The court also found that it was necessary for the plaintiff elevator company to bring the action compelling the defendants to interplead and litigate their claims; that no other liens existed against the 1934 crop, except that Mitzel had a first and prior lien to the sum of $104, leaving the sum of $136 still owing from Bammel to Mitzel on the $240 obligation; that Mitzel had received certain wheat, part of the 1934 crop, which netted him $153.90, thereby reducing the indebtedness from Bammel to $86.10; and that thereafter Bammel was entitled to the remainder of all of the proceeds of the crop, subject to the chattel mortgage lien of Cheetham, and that neither the Reconstruction

Finance Corporation nor any other agency of the federal government furnished any seed for the 1934 crop.

From the findings of fact the court made the following conclusions of law: That the plaintiff elevator company had discharged its obligations in the premises, and was entitled to its costs incurred in the action; that Mitzel was entitled to $86.10 and Cheetham to $502.98, which amounts, in addition to plaintiff's costs, were all prior and superior to any right of Bammel to the proceeds of the wheat; that the Reconstruction Finance Corporation and all other agencies of the federal government were without right to any of the proceeds of the crop; that Bammel was entitled to all of the remainder of the $1,061.25 after first deducting plaintiff's costs and the Mitzel and Cheetham awards, and that Mitzel and Bammel were to pay their own costs.

Mitzel appealed from the judgment. All of the other parties, except the governmental agencies, which were never served with process and were not represented at the trial, appeared as respondents.

The assignments of error are numerous, but they really contemplate (1) the sufficiency of the complaint, (2) sufficiency of the evidence, and (3) costs. As before stated, the action was brought under the provisions of section 4095, Revised Codes. Appellant contends that the action was really a general interpleader suit under section 9087. He contended at the trial and here that under that section the action could not lie because the elevator company sought affirmative relief in attempting to collect storage charges and to have the erroneously issued tickets cancelled. In other words, he contends that the elevator company in this instance was not merely a stakeholder and was not suing as such, but rather was attempting to obtain other and additional affirmative relief. We do not agree that such elements should defeat the right to maintain the suit under section 4095. This section is the interpleader section designed and provided by the legislature for just such an emergency as this. The next succeeding section (4096) provides for the protection of a warehouseman during the pendency of the inter-

pleader suit. All of the authorities cited by appellant have relation to the general interpleader proposition, rather than the special one included in the Warehouseman Act.

The contention that the storage charges could not be adjusted in the action prosecuted under the provisions of section 4095 is not sound. Section 3579, Revised Codes, which is a part of a general Chapter having to do with grain grading, grain standards and marketing, provides that a public warehouseman must make a charge for handling and storing grain and fixes the schedule of prices to be charged. It also provides that a failure on the part of any public warehouseman to comply with the provisions of the Act will render the license of such warehouseman subject to revocation and cancellation by the commissioner of agriculture. All pertinent provisions of the law must be considered together. If the elevator company had attempted to interplead without claiming its storage, it would have subjected itself to the penalty of the other statute. It is not reasonable to presume that these statutes are in conflict. The contention of appellant would effect just that result.

Appellant's contention that the attempt of the elevator company to obtain the cancellation of the erroneously issued storage tickets was improper seems to us to be entirely groundless. The interpleader provision certainly contemplates that the court must decide the amount due each party,—in other words, settle all issues between the parties.

There were two issues in this case. The first involved the question of the division of the proceeds of the wheat, and the second involved the amount of wheat actually held in storage and the value thereof. We are of the opinion that the action was proper and that the issues mentioned were properly included. It then becomes apparent that the demurrers were properly overruled and that the cause was submitted to the court in accordance with our statutes.

Many of the specifications of error challenge the findings of fact made by the court. The record is voluminous, but we have examined all of it with care. A good many of the facts were admitted at the trial. The main issue left in controversy for

decision by the court had to do with the agreement for the termination of the land contract made between Mitzel and Bammel. On that point there is a decided conflict in the evidence. The court resolved this conflict in favor of Bammel. There was ample evidence to support such finding by the court. On the record, we are of the opinion that the testimony and circumstances of the case inevitably dictated and required the finding made by the court.

Another of the assignments of error urged by appellant had to do with the Cheetham mortgage. Appellant insists that there should have been a marshaling of the assets of Bammel, because the Cheetham mortgage covered property of Bammel other than the wheat. This becomes unimportant because there was no conflict between Bammel and Cheetham, and for the further reason that if the finding in favor of Bammel as against Mitzel in the matter of the ownership and division of the crop is to be sustained, as we have indicated, then Mitzel is left without further interest in Bammel's share of the wheat. His only interest, as found by the court, was the $240 debt owed to him by Bammel; all the rest of the wheat belonged to Bammel. It could make no possible difference to Mitzel whether the proceeds of Bammel's wheat are to be kept by him or devoted to the payment of his mortgage indebtedness to Cheetham.

The findings of the court on all of the issues involved in the case were unusually comprehensive. They were carefully worked out in accordance with law and were certainly supported by evidence. It seems to us that, while the record is long, the assignments of error numerous, and the facts somewhat involved, after all the two questions necessary for decision were as to the form of the action and the sufficiency of the evidence. In these particulars the court's ultimate conclusions and judgment were correct.

The court made an order adjusting the costs of the trial in the district court. It was ordered that after the payment of the sums of $86.10 to Mitzel and $502.98 to Cheetham, the costs of the elevator company should be deducted from the balance then due to Bammel, and that Bammel, Mitzel and

Cheetham should each pay their respective costs. The court properly exercised its discretion in making the order (sec. 9789, Rev. Codes). It is true that all parties involved received something from the judgment, but in view of the fact that the elevator company was innocent in the premises and was not responsible for the litigation, whereas the other parties were, we think the award of costs was proper. (See *Zunchich* v. *Security Building & Loan Assn.*, 85 Mont. 341, 348, 278 Pac. 1011.)

The judgment is affirmed.

Mr. Chief Justice Sands and Associate Justices Anderson, Morris and Angstman concur.

Rehearing denied May 4, 1938.