EASTMAN, RESPONDENT, *v.* SCHOOL DIST. NO. 1 OF LEWIS AND CLARK COUNTY ET AL., APPELLANTS

No. 8700

Submitted January 20, 1947. Decided April 18, 1947.

180 Pac. (2d) 472

Mr. Edmond G. Toomey, Mr. Ralph J. Anderson, Mr. Forrest H. Anderson, and Mr. Albert C. Angstman, all of Helena, for appellants. Mr. Anderson and Mr. Angstman argued the cause orally.

Mr. Lester H. Loble, of Helena, Mr. H. C. Hall, of Great Falls, and Mr. Henry Loble, of Helena, for respondent. Mr. Loble and Mr. Hall argued the cause orally.

Mr. Sid G. Stewart, of Anaconda, Mr. Thomas C. Colton, of

Billings, Mr. Leif Erickson, of Helena, and Mr. H. J. Free bourn, of Butte, amici curiae on petition for rehearing only.

MR. JUSTICE CHOATE, delivered the opinion of the court.

Respondent, Violet Eastman, plaintiff in the lower court, brought suit against school district No. 1 of Lewis and Clark county, Montana, and against the trustees of the district, seeking a declaration of her rights and status as a teacher in the schools of said district for the school year of 1945-1946. The case was tried to the court without a jury. The court made its findings and conclusions in favor of the plaintiff and entered judgment that she had been re-elected by operation of law to the position of teacher in said school district No. 1 for the school year 1945-1946. Defendants appeal from that judgment.

The following facts material to the determination of the case are established by the evidence: Miss Eastman, who will be hereafter designated as the plaintiff, is a school teacher, the holder of a Bachelor of Arts degree and a secondary life certificate authorizing her to teach in grades six to twelve in any school in the state of Montana. Plaintiff first started teaching in school district No. 1 of Lewis and Clark county in the year 1938. She continued to teach in said position continuously up to the school year of 1944-1945 under successive contracts of employment with the trustees of the school district. On April 25, 1945, plaintiff received from the defendant school board a letter written on the letterhead of said board which, omitting only the names of the trustees which were printed on the letterhead, reads as follows:

"Helena, Montana
"April 25, 1945

"Miss Violet M. Eastman
"229 6th Avenue
"Helena, Montana

"Dear Miss Eastman:

"The School Board of District #1 at a meeting held last

66

night, Tuesday, April 24th, 1945, decided not to renew your contract for the 1945-46 school year.

"Sincerely yours,

"s/ J. F. McBride

"J. F. McBride

"Secretary."

The above letter was sent to the plaintiff by the secretary of the school board pursuant to the following action of the trustees of said school district, as appears from the minutes of said board of April 24, 1945. Following is a copy of the portions of said minutes material to this case:

"Helena, Montana—April 24, 1945.

"A special meeting of the Board of Trustees of Helena School District No. 1 was held this evening in the board room. The meeting was called to order by Chairman Young at 7:30 p. m. Notices of this meeting were mailed to each member of the board through the regular United States Mail April 21, 1945, after the call at the close of the meeting on April 19, 1945.

"*Roll Call Members Present* Trustees: F. E. Young, Mrs. Malcolm Bowden, John Carlson, Jr., S. A. Douglass, H. W. Larson, R. A. Neill and J. A. Woodard. Also present were Supt. Carleton, Clerk McBride, and James Poor, Building Superintendent.

"*Purpose of the Meeting* The Chairman stated that this special meeting was called for the purpose of considering salaries of supervisors and to act on the matters of Violet Eastman's and Earl Fahland's contracts, and any other business to come to the attention of the board for its consideration.

"*Miss Violet M. Eastman* After a lengthy discussion a motion was made by Trustee Carlson that Miss Violet M. Eastman's contract not be renewed for 1945-1946, and that she be given written notice of this action through the Clerk and the Superintendent. The motion was seconded by Trustee Larson and carried, with Trustees Bowden, Carlson, Larson and Neill voting 'Yes,' and Trustees Woodard and Douglass voting 'No.' Chairman Young did not vote."

The above special meeting of the school board was called by the chairman of the board at the request of six members thereof following the adjournment of a previous regular meeting of the board held on April 19, 1945. Notices of the said special meeting were mailed to each member of the board on April 21, 1945. Upon the trial of the case the court admitted in evidence certain memoranda or rough drafts of the minutes of the school board of its meetings of April 19th and April 24, 1945. The court also permitted the notes of the school board's stenographer who wrote them up before they were entered in the minute book to be read in evidence. This evidence was offered for the purpose of impeaching the official minutes of the school board, the material parts of which have been herein set out. Appellants assign their admission as error.

Questions presented. Two controlling questions are presented by this appeal.

First, did the notice of April 25, 1945, which was sent to plaintiff by the defendant school board substantially comply with the requirements of section 1075, Revised Codes of Montana 1935?

Second, are rough drafts of the minutes of a school board meeting which were prepared by its secretary or by a stenographer employed by the board, in attendance at a meeting of the board, admissible to contradict the recitals of the official minute book of the board?

We will first consider the sufficiency and effect of the notice. Section 1075, Revised Codes, reads in part as follows:

"After the election of any teacher or principal for the third successive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustes shall by a majority vote of its members on or before the first day of May give notice in writing to said teacher or principal that he has been re-elected or *that his services will not be required for the ensuing year.*" The question presented is whether the notice given plaintiff by the school board that it

*"decided not to renew your contract"* is substantially the equivalent of the notice required by section 1075, namely, a notice that "his services will not be required for the ensuing year."

It would almost seem that the very asking of the question is ▮ sufficient to indicate its answer without reference to decided cases involving similar facts. Section 1015 reads in part as follows: "Subdivision 2. * * * no teacher shall be employed except under resolution agreed to by a majority of the board of trustees at a special or regular meeting * * *. All contracts of employment of teachers, authorized by proper resolution of a board of trustees, shall be in writing and executed in duplicate by the chairman and clerk of the board, for the district and by the teacher." Under this statute no person can be employed to teach in the public schools without a contract with the board of school trustees. The so-called teachers' tenure act (sec. 1075, Rev. Codes) which is operative after the third consecutive year of a teacher's employment does not do away with the necessity of having a contract as required by section 1015. The only effect of said section 1075 is to renew the teacher's existing contract for another year by operation of law, after her election for the third consecutive year unless the notice specified in said section is given. Therefore, whether a teacher is the holder of a written contract for her first year's service or whether her contract has been extended by operation of law under section 1075, the situation is the same. The teacher is still employed under a *contract,* a teacher cannot be employed, he cannot perform services as a teacher, he cannot draw pay from the school district without a contract. Accordingly, because a person's right to teach in the public schools of Montana is created by contract, rests upon contract and ceases upon expiration of the contract, it would seem that no holder of an A.B. degree, who had spent seven years in the teaching profession, could by any possibility have failed to understand that a notice to her that her employers, the school board, "had decided not to renew her contract" *meant* that her services would no longer be required. Obviously

defendant did understand that her services were no longer required as is evidenced both by her letter to the board and also by the promptness with which she instituted this action to protect her asserted rights.

The commendable diligence of counsel on both sides of this cause has supplied us with numerous authorities both from our own court and from other jurisdictions bearing upon this question. These cases are indicative only of the principles of law by which this appeal must be governed since none of them involve the use and effect of the very identical words "the board decided not to renew your contract." We do not consider it necessary to review in detail all of the cases cited in the briefs of counsel which involve facts materially different from those we are considering. Such cases are: Smith v. School District; 115 Mont. 102, 139 Pac. (2d) 518; McBride v. School District, 88 Mont. 110, 290 Pac. 252; LeClair v. School District, 74 Mont. 385, 240. Pac. 391; Moses v. School District, 107 Mont. 300, 86 Pac. (2d) 407; Day v. School District, 98 Mont. 207, 38 Pac. (2d) 595. The McBride case (McBride v. School District, supra) [88 Mont. 110, 290 Pac. 255], however, indicates the rule of law which has been applied by this court in passing upon the sufficiency of notices of dismissal of school teachers under section 1075.

In that case the notice given the teacher was not at all like that involved in the present suit and obviously it did not meet the requirements of section 1075. In so holding we said: "The notice of dismissal therein provided for must be clear and explicit." And what is a "clear and explicit" notice? These four short words are not susceptible of definition or explanation in such manner as to clarify their meaning. As defined in Black's Law Dictionary, however, "clear" means "plain," "evident," "obvious," "free from doubt." "Explicit" is defined by Words & Phrases as meaning "not obscure or ambiguous, having no disguised meaning or reservation." Surely the requirement that a notice must be "clear and explicit" means only that it must clearly and plainly convey its meaning.

We have already indicated our reasons for the conclusion that plaintiff could not reasonably upon receipt of the letter from the school board, have misunderstood its meaning or have escaped knowledge of the fact that ''her services would not be required for the ensuing year.''

In order to give plaintiff a clear and explicit notice that ██ would meet the requirements of section 1075 of our Code, it was not necessary for the school board to couch it in the literal word for word language of said section. It was only necessary that the notice given substantially comply with the language of said section. The California case of Volandri v. Taylor, 124 Cal. App. 356, 12 Pac. (2d) 462, involved both a statute and state of facts very similar to the case at bar. The California statute provided that, ''On or before the tenth day of June in any year the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year.'' School Code, sec. 5.681. It will be noted that this statute is identical with ours as respects the requirement that the teacher must be notified that his ''services will not be required'' for the ensuing year. In that case the following notice was given the teacher by the clerk of the school board: ''As Clerk of the Board of Trustees it becomes my painful duty to inform you that at a recent meeting of the Board you were not re-elected as a member of the faculty.'' In holding that said notice substantially complied with the statute, the court said: ''It is true the employment of a probationary teacher is presumed to continue unless he is notified of the termination thereof as provided by section 5.681, supra. It is not necessary, however, to notify him in the exact language of the statute that 'his services will not be required for the ensuing year.' Any language which may be reasonably understood to mean that his tenure as a probationary teacher has been terminated is sufficient.''

To the same effect is the Nevada case of State ex rel. Walton ██ v. Roberts, 55 Nev. 415, 36 Pac. (2d) 517, 518. There the statute provided that the teacher would be deemed re-elected

unless the school board "notified in writing the teachers in their employ on or before the 15th day of May of each year concerning the re-employment of such teachers for the ensuing year." Comp. Laws, sec. 5998. The notice given the teacher by the clerk notified her that the "Lake Consolidated School Board has decided to abolish the position of Elementary School Principal for the year 1933-34." The court held that this notice was sufficient and that the statute should be liberally construed. It is our conclusion that the notice given plaintiff by the school board substantially complied with the requirements of section 1075, Revised Codes of 1935, and was sufficient to terminate plaintiff's contract of employment under the provisions of said section.

Construction of Act. We are unable to agree with the respondent's contention that the requirements of section 1075 are mandatory or that they must be strictly construed against the school district and in favor of the teacher. This court has never given its approval to any such construction of the section and we find no warrant for doing so in the present case. The courts are not in entire agreement on the question of the construction to be given teachers' tenure statute. 47 Am. Jur. 391, sec. 129, states the rule as follows: "To insure accomplishment of the purposes for which tenure statutes are enacted, it is held that they should be liberally construed (citing 110 A. L. R. 794, 113 A. L. R. 1496 and 127 A. L. R. 1300), although a contrary view has been taken, upon the ground that such legislation is in derogation of the common law." We prefer the reasoning of such cases as State ex rel. Clark v. Stout, 206 Ind. 58, 187 N. E. 267, holding that the teachers' tenure statute should not be strictly but should be liberally construed to effect the general purpose of such acts. This construction accords with the requirements of our statute, sec. 4, Rev. Codes of 1935, that the provisions of the Codes are to be liberally construed with a view to effecting their objects and to promote justice. But whether liberally or strictly construed, section 1075 cannot be so restricted in its meaning and

effect as to exact from school boards a slavish adherence to its language to the disregard of its spirit and purpose.

Our conclusions relative to the construction to be given section 1075 find further support in the fact that while said section is commonly referred to as a "teachers' tenure Act," it is not in fact a complete teachers' tenure law but only partially covers the matter of retention or discharge of teachers. The Act makes no provision for any showing of cause or for a hearing before a teacher can be discharged. While legislation of this nature may be open to question as to its policy, relief can be had only from the legislature and it is at least significant that our legislative assembly recently adjourned rejected a bill to incorporate provisions of the character above indicated in the teachers' tenure statute.

Admission of evidence. Appellants have assigned as error the admission by the trial court of the notes and rough drafts of the minutes of the school board to contradict the official minutes of the board. The general rule as stated in 20 Am. Jur. 1018, section 1165, is that public records cannot be contradicted or enlarged by parol evidence. 56 C. J. 358, section 242, states the same rule as applied to school district records as follows: "The rule that parol evidence in a collateral proceeding cannot be received to contradict the records of a public corporation required by law to be kept in writing, or to show a mistake, applies to school district records." Citing Everts v. Rose Grove District, 77 Iowa 37, 41 N. W. 478, 14 Am. St. Rep. 264. We have applied the principle of law prohibiting the contradiction of public records by parol evidence in Montana Ore Purchasing Co. v. Maher, 32 Mont. 480, 81 Pac. 13, involving minutes of a county board of equalization; in State ex rel. Urton v. American Bank & Trust Co., 75 Mont. 369, 243 Pac. 1093, involving minutes of a board of county commissioners; and in State ex rel. Haley v. Wilworth, 80 Mont, 111, 258 Pac. 250, involving minutes of the board of directors of an irrigation district. We hold this principle of law to be applicable to the case at bar. Furthermore, whether admissible

or not, the evidence in question did not, in our opinion, contradict the essential recitals of the minutes which plainly disclosed that a notice of dismissal was actually given by the school board to the plaintiff in substantial compliance with the requirements of section 1075 of our Code.

The judgment of the lower court is reversed with instructions to enter a declaratory judgment in favor of appellants, defining plaintiff's status as a teacher in the schools of school district No. 1, Lewis and Clark county, Montana, for the year 1945-1946 in accordance with the views herein expressed.

Mr. Justice Angstman (specially concurring).

In agreeing with the opinion of Mr. Justice Choate I feel impelled to state the reasons why I cannot subscribe to the conclusions in the dissenting opinions of Mr. Chief Justice Adair and Mr. Justice Metcalf.

I will say at the outset that were I in doubt on the subject I would be inclined to resolve such doubt in favor of Miss Eastman. If the statute were open to two constructions I would adopt the one most favorable to Miss Eastman. If the statute were ambiguous I would resolve the ambiguities in her favor. The difficulty here is that the statute is plain and unambiguous, and open to but one construction, and in my opinion the conclusion reached by the dissenting opinions requires a rewriting of the statute. That conclusion, in the words of Mr. Justice Cooper (Hilger v. Moore, 56 Mont. 146, 178, 182 Pac. 477, 485), "defines the letter, [and] scorns the spirit" of the statute.

The principal fallacy of the dissenting opinions rests in the fact that they erroneously assume that under our statute a teacher, after serving three consecutive years, attains a permanent tenure status under a continuing contract.

If that were so, I could readily subscribe to the conclusions that the teacher could not be discharged without cause; that affiliation with a labor union, if such were the case, would be no cause for his discharge and that the board cannot arbitrarily discharge a teacher who has attained such a status. The statute

does not give a teacher a permanent tenure, but subjects him to the necessity of being re-elected from year to year. If that works an injustice the fault lies with the legislature in not enacting legislation that will give teachers more security in their employment.

The statute, section 1075, Revised Codes, reads: "After the election of any teacher or principal for the third con- secutive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its memebers on or before the first day of May give notice in writing to said teacher or principal that he has been re-elected or that his services will not be required for the ensuing year; provided that nothing in this act shall be construed to prevent re-election of such teacher or principal by such board at an earlier date and also provided that in case of re-election of such teacher or prin- cipal he shall notify the board of trustees in writing within' twenty days after the notice of such re-election of his accept- ance of the position tendered him for another year and failure to so notify the board of trustees shall be regarded as con- clusive evidence of his non-acceptance of the position."

The statute is not open to the construction that the teacher, after serving three consecutive years, is placed upon a con- tinuing, permanent tenure contract. Rather the statute per- mits and authorizes the school board to re-employ the teacher for another year in one of three methods, or to decline to re- employ her. If the board chooses to re-employ the teacher it may be done in either of three ways: First, by the board giving the teacher notice on or before the first day of May that "he has been re-elected." In that event the teacher must within 20 days after notice of such re-election notify the board of "his acceptance of the position tendered him" and failure to do so is by the statute conclusive evidence of his non-ac- ceptance of the position.

This part of the statute has to be eliminated in order to

reach the conclusion that a teacher after three years of service has a permanent tenure.

Second, under the statute, the board may re-elect such teacher at an earlier date than May 1st. If the teacher be on a permanent contract, why the provision for her re-election anually?

Third, by taking no action at all.

The board may also take affirmative action not to re-elect the teacher. To do this the board must on or before May 1st give notice to the teacher "that his services will not be required for the ensuing year."

Obviously under the statute a teacher who has taught for three consecutive years obtains only the rights provided for by statute. Those rights are simply that he shall be automatically considered an applicant for the position from year to year and if the board does not affirmatively re-elect him before a stated time or give notice that it refuses to re-employ him, then his re-election is automatic.

In other words the effect of the statute is to place such a teacher in exactly the same position as a new applicant for the position, with the added feature of re-employment automatically if no action be taken by the board before May 1st. The board is confronted each year, not with the problem of whether it will discharge a teacher who has served three consecutive years or more but whether it will re-employ him.

Section 1085 relating to the discharge of teachers for cause has application by its own terms to teachers dismissed "before the expiration of any written contract entered into between such teacher and board of trustees:" It has nothing to do with applicants who have no contract. In this case the board did not discharge Miss Eastman from an existing employment but refused to re-employ or to re-elect her as one of the teachers for the year in question. In that respect it differs essentially from the case of State ex rel. Howard v. Ireland, 114 Mont. 488, 138 Pac. (2d) 569, relied upon in the dissenting opinions. There the superintendent was discharged from an

existing employment. Here there was no discharge but mere refusal to re-employ.

The case of Bourne v. Board of Education, 46 N. M. 310, 128 Pac. (2d) 733, 736, had under consideration statutes similar to our sections 1075 and 1085. One section of the New Mexico statute provided for the automatic renewal of the teacher's contract if the governing board failed to give notice before a specified time whether it desired to "continue or discontinue the services of such teacher or employe for the ensuing school year." Laws 1941, c. 202 sec. 1. Another statute provided that "no teacher having a written contract shall be discharged except upon good cause and after hearing on written charges" and provided for notice of the hearing. Laws 1941, c. 202, sec. 3.

The court in speaking of the purpose of the first statute, said: "It was to prevent school boards from waiting until just before school starts each year before notifying teachers that they were not to be employed.

'It is known that school teachers are engaged in highly specialized work requiring extensive and exacting training. They are usually required to attend summer school in order to become better qualified to carry on their profession. It was thought that it would encourage attendance upon these summer schools, if teachers were afforded a sense of security by being notified on or before the closing day of school, whether their existing contract of employment would be renewed for the ensuing year. This purpose of the statute is commendable."

Continuing the court said: "There is quite a difference between discharge from employment and not being re-employed. It is noted even in the case of implied renewal of employment, the teacher is not obliged to enter into a renewal of the contract.

"No unfavorable implications necessarily arise from not being re-employed, whereas discharge from existing employ-

ment without good cause, explanation, or a hearing, would be attended with injustice and hardship.

"Section 3 of Chapter 202, Laws 1941, requires that no teacher having a written contract shall be discharged 'except upon good cause'. Under Section 1, the governing school board is not so restricted in its determination of the desirability of renewing the employment of teachers for the ensuing school year."

Under our statute, section 1015, Revised Codes, the school board has the power to employ teachers. It may refuse to employ or re-employ either with or without cause, and is not bound to give any reason for its action. People ex rel. Fursman v. City of Chicago, 278 Ill. 318, 116 N. E. 158, L. R. A. 1917E, 1069. In that respect there is no difference under our statute between those who have taught three consecutive years or more and those who have not. The situation is exactly the same as appointments to any other position of trust. There may be several applicants for one position. The appointing power is not required to give reasons for rejecting all the applicants but one. The only difference here is that after three years of service the board must take affirmative action one way or the other before May 1st and, if not, the re-employment becomes automatic for another year. Compare Morse v. San Diego H. S., 34 Cal. App. 134, 166 Pac. 839, 840, where the court in considering the contention that the board has no right to dispense with the services of a teacher without making charges against her under a statute practically identical with ours said: "We have examined that section with much care, and in our opinion to give it the effect argued for by appellant would be to 'legislate judicially' and import by construction provisions not found within the terms of that section, thus imposing upon the law a clearly forced interpretation."

If this is a harsh rule the fault lies with the legislature. If it is un-American, then it is time that Montana bring its school laws in line with the American system, but here again, under our constitutional form of government that function

lies with the legislature and this court may not, even for a popular cause, change the statute.

There is nothing in the case of State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 Pac. (2d) 306, that gives support to the result contended for in the dissenting opinions. That case turned upon the meaning of regulations of the state board of education which were made a part of the teacher's contract. It had nothing whatever to do with section 1075, Revised Codes.

Stress is placed upon the fact that the legislature labelled or entitled section 801 of the 1913 Laws, c. 76, as "Tenure of Office of Teachers." "It is the wording of the body and not that of the title which controls." State ex rel. Jones v. Erickson, 75 Mont. 429, 244 Pac. 287, 296, State ex rel. Palagi v. Regan, 113 Mont. 343, 126 Pac. (2d) 818. If however, we resort to labels or titles it might be helpful to point out that the label or title to section 1075 contains this language: "Re-election of teachers." The substance of the Act also provides for the re-election of teachers. Why speak of the re-election of teachers if they already are on a permanent tenure—if they already have been re-elected by operation of law or otherwise? To reach the conclusion announced by the dissenting opinions requires a reversal of what was said by Mr. Justice Adair in speaking for the court in the case of Smith v. School District, 115 Mont. 102, 139 Pac. (2d) 518, 522, as follows:

"In 1934, the board of trustees elected appellant to the position of teacher of the upper grades in the public school in the town of Valier. Appellant performed his duties as such teacher in the Valier public school and annually thereafter in 1935, 1936, 1937, 1938 and 1939 he was *re-elected* to this same position as teacher of the upper grades in the public school in Valier.

"The board of trustees was not required to thus *re-elect* appellant each year. At any time, on or before the first day of May in any year, the board could 'by majority vote of its members * * * give notice in writing to said teacher * * * that his services will not be required for the ensuing year'; (sec. 1075,

Rev. Codes) *and such action on the part of the board would have effectively prevented the return and re-election of appellant for the ensuing year.* (Emphasis mine.)

"When a board of trustees desires to retain for another year a teacher who has already held a teaching position for the third consecutive year or more, three courses are open to it. These are:

"First, by resolution agreed to by a majority of the trustees at a .meeting regular or special the employment may be authorized and a formal written contract in duplicate may be executed by the chairman and clerk of the board for the district and by the teacher as provided for in subdivision 2 of section 1015, Revised Codes of Montana. This is the course followed by the board, when, under date of April 12, 1939, it entered into the formal written contract with appellant for the period of nine months commencing on the 2nd day of September, 1939;

"Second, the board may, 'by majority vote of its members on or before the first day of May give notice in' writing to said teacher * * * that he has been re-elected' as provided for in section 1075, Revised Codes of Montana. This is the course followed by the board when it sent the letter to appellant prior to the first of ·May, 1940, notifying him of his re-election for the school year of 1940-41;

"Third, the re-election of the teacher who has taught for the third consecutive year or more may be accomplished simply by the nonaction of the board under section 1075, Revised Codes of Montana."

Also if a teacher, after serving three consecutive years attains a permanent tenure status so that his services may not be dispensed with except for cause under section 1085, as the dissenting opinions state (but this I do not concede), then plaintiff has mistaken her remedy. Under section 1085, Revised Codes, she may appeal to the county superintendent. Under that section if the county superintendent "decides that the removal was made without good cause, the teachers so

removed must be reinstated, and shall be entitled to compensation for the time lost during the pending of the appeal." That is an adequate remedy. The rule is well settled in this jurisdiction that resort may not be had to the courts until adequate remedies by administrative boards have first been exhausted. Kelsey v. School District, 84 Mont. 453, 276 Pac. 26; Peterson v. School Board, 73 Mont. 442, 236 Pac. 670; State ex rel. School District v. Trumper, 69 Mont. 468, 222 Pac. 1064.

In the Kelsey case, in speaking of the dismissal of a teacher without cause, this court said: "From the action of the board in discharging the plaintiff she had a plain, speedy and adequate remedy—by appeal first to the county superintendent, and, having been unsuccessful in that, to the superintendent of public instruction. Peterson v. School Board, 73 Mont. 442, 236 Pac. 670; Kinzer v. Directors of Independent School District of Marion, 129 Iowa 441, 105 N. W. 686, 3 L. R. A., N. S., 496, 6 Ann. Cas. 996. It is unquestionably the policy of this state, as declared by the Legislative Assembly, that ordinary school controversies shall be adjusted by those who are specially intrusted with that duty. It is not the policy to encourage resort to the courts in such matters." And see Belknap Realty Co. v. Simineo, 67 Mont. 359, 215 Pac. 659; Yellowstone Packing & Provision Co. v. Hays, 83 Mont. 1, 268 Pac. 555; State ex rel. Souders v. District Court, 92 Mont. 272, 12 Pac. (2d) 852.

Had the legislature thought that it had provided a permanent tenure for teachers after three consecutive years of teaching in a district, there are other questions which it would have legislated upon. If Miss Eastman has or had a permanent tenure then the same would be true of each and every teacher in Montana who has served three consecutive years in a district. If such teachers have a permanent tenure then it would follow that there would exist mutual rights and obligations between the teachers and the school boards. In other words, may such a teacher decline to serve without subjecting himself to liability for breach of contract, and if so, under what terms and conditions

may he refuse to serve?. May the teacher accept another employment and fail to notify the school board of his election not to serve for the ensuing year, or if he must give the board notice of his refusal to serve, within what time must he give such notice?

Likewise, if there be such permanent tenure, may the salary be reduced by the board or may the teacher demand more salary? These are all questions that the legislature must provide for in case there be a permanent tenure. They are vital questions in these days when it is matter of common knowledge that the salary paid to many teachers is not sufficient with which to pay the taxes and the high cost of living and when teachers are being forced into other lines of employment in order to make both ends meet. All these questions should be faced and met by the legislative assembly of Montana, whose duty it is under our Constitution "to establish and maintain a general, uniform and thorough system of public, free, common schools." Sec. 1, Art. XI, Mont. Const.

Had the legislative assembly thought for a moment that it had provided permanent tenure for teachers of three consecutive years' service, the questions above alluded to and others would certainly have been given consideration and provided for.

The next fundamental error in the dissenting opinions is that of reading into section 1075 language to the effect that the notice given by the board that it refuses to re-employ a teacher has application only to cases where there has been a change in the program, a lessening of the number of pupils, consolidation of districts or through the abolition of an entire department in a school. It requires rather fine-spun theorizing to arrive at such a result. There is nothing in the statute on which to hang such a theory. It is purely a figment of the imagination. We are commanded by section 10519 that the office of this court in construing a statute, "is simply to ascertain and declare what is in terms or in substance contained

therein, not to insert what has been omitted, or to omit what has been inserted.''

If the legislature desired to so limit the board it could easily have said so. Instead it used the standard, stereotyped phrase commonly used to discharge an employee under an existing employment or to inform an employee that his contract of employment would not be renewed; that he would not be retained for further employment; that the employer was dispensing with *his* (the employee's) services. The statute requires notice that ''*his* services will not be required for the ensuing year.'' The dissenting opinions stress the word ''required,'' but fail to place the proper emphasis on the word *his*.

The instances wherein the services of no one would be required arise so seldom that it is unbelievable that the legislature intended to so restrict the statute. Had the legislature intended to restrict the words, ''his services will not be required for the ensuing year,'' to the cases mentioned in the dissenting opinions, then the legislature would certainly have gone further and pointed out how it desired the board to function when there were two or more applicants for a position, each of whom was equally qualified and each of whom had served three consecutive years, or when only one of two or more applicants had served three consecutive years.

A few illustrations will suffice to indicate that such a strained, unnatural and distorted construction of the statute would render it meaningless. Let us suppose we have a school district with two teachers. One has served but one year, and the other three consecutive years. It is decided by the board that owing to a reduction in the number of pupils and in the interest of economy one teacher will suffice. May the board give notice to the one who has served three consecutive years that ''his services will not be required for the ensuing year'' and give the position to the teacher who has taught but one year?

Or let us say that in the given case both had served three consecutive years. May the board give either of them the

notice that "his services will not be required for the ensuing year," and if so which one? In other words, what meaning has the word "required" in such cases?

The same illustrations may be given where there has been consolidation of districts. The consolidated district will have two sets of teachers with use but for one set. What definition should be placed upon the word "required" which will permit the board to serve notice on one set of teachers and not on the other, that their services will not be "required" for the ensuing year?

The fact is that the statute does not in anywise restrict the meaning of the phrase, "his services will not be required for the ensuing year." That phrase, when considered with the full text of section 1075, is the method of notifying a teacher who has taught three consecutive years that the board has decided not to re-elect or re-employ the teacher for the ensuing year. This identical language appears in the California statute considered in Volandri v. Taylor, 124 Cal. App. 356, 12 Pac. (2d) 462, and no such restricted meaning was placed upon the phrase "his services will not be required for the ensuing year." No such restriction was alluded to in the Smith case, supra, wherein the statute was carefully analyzed. Also, there is respectable authority that even as to tenure teachers they may be dismissed at any time when their services are no longer needed because of consolidations and the like. In 47 Am. Jur., page 397, it is said: "The principle that tenure teachers may be dismissed where their services are no longer needed has been extended to situations embracing both the consolidation of schools and the abolition of an entire department in a school. As a limitation upon this rule, it should be noted, however, that departments in a school may not be abolished merely to circumvent the provisions of a tenure act and to accomplish the dismissal of teachers for arbitrary political reasons by unlawful subterfuge, although, of course, if the abolition of a department takes place in good faith, for finan-

cial or educational reasons, it will have the effect of legal dismissal of the teachers." See note in 127 A. L. R. 1319 et seq.

In other words, at least in some states, the rule is that the consolidation of schools or the abolition of a department if done in good faith, is cause for the discharge of a teacher under a regular contract. See cases cited in the note in 127 A. L. R. 1320.

If a teacher after three consecutive years of service has a permanent tenure and if the notice that "his services will not be required for the ensuing year" has application only to situations where no one's services will be needed, it is strange that this startling discovery was not made sooner. Able counsel representing Miss Eastman do not make any such contention; neither do they have the hardihood to contend in the face of the statute that a teacher of three years' standing has a permanent tenure or that his services may not be dispensed with except for cause. The district judge made no such finding. If the dissenting opinions had any foundation in the statute, then Miss Eastman has a permanent contract with the school district and she should have brought action to have her rights and status declared for life rather than for one year. If the statute were open to that construction her counsel would not have overlooked the point.

That the teachers and those interested in bettering their conditions of employment know the defects in our present statute is attested by the fact that three times have they tried to obtain legislation designed to give them the rights which the dissenting opinions say they already have. By Senate Bill No. 108 introduced in the 1943 session, long before this case arose, it was sought to amend section 1075 making it necessary for the board to state reasons when a teacher's re-employment was not desired and providing for a hearing. It failed of passage. The title to that Act was as follows: "An Act to Amend Section 1075 of the Revised Codes of Montana 1935, Relating to the Re-election of Teachers, Showing When Re-election Becomes Automatic, Requiring Board to Give State-

ment of Reasons When Teacher's Re-employment Is Not Desired, Providing for Hearing."

In the 1945 session, House Bill 305 was introduced, the title of which was practically identical with that of Senate Bill #108 introduced in 1943. It likewise failed of passage.

Senate Bill #94 was then introduced in the 1947 session. By it the teacher was given a contractual service status which could not be terminated except for cause and after hearing. This too failed of passage.

It is suggested in the dissenting opinion of Mr. Justice Metcalf that the inference to be drawn from the refusal of the legislature to pass any of the legislation thus proposed is that the legislature believed the present law to be a tenure law and did not wish to disturb it. He relies upon a Wisconsin case (State ex rel. Nyberg v. Board of School Directors, 190 Wis. 570, 209 N. W. 683) in support of that statement. That case had nothing to do with the construction of a statute. There the issue was whether there was any basis for the admitted classification, i. e., where a tenure statute applied only to cities of the first class and not to other cities. The court simply held there was a proper basis for such classification.

If it be conceded that the legislature of 1943 might have supposed that section 1075 gave teachers of three years' service a permanent tenure (but I am unable to find in the statute any basis for such a belief), still I think it is a violent assumption that would allow the same inference as to 1945 and 1947.

In April, 1943, the case of Smith v. School District, 115 Mont. 102, 139 Pac. (2d) 518, 522, was decided wherein the court, speaking through Mr. Justice Adair, said: "The board of trustees was not required to thus re-elect appellant each year. At any time, on or before the first day of May in any year, the board could 'by majority vote of its members * * * give notice in writing to said teacher * * * that his services will not be required for the ensuing year' (sec. 1075, Rev. Codes); and such action on the part of the board would have

effectively prevented the return and re-election of appellant for the ensuing year."

In the face of that positive declaration by this court in April of 1943, there was no room for such a charitable inference in 1945 and 1947. After the decision in the Smith case the refusal of the legislature to enact the legislation before it in 1945 and 1947 must, under the rule in Bottomly v. Ford, Mont., 157 Pac. (2d) 108, be taken as proof that the legislature was satisfied with and ratified and approved the rule stated in the Smith cases.

Even if we were firm in the belief that we could do a better job of legislating than the legislative branch of our government, that fact would not give us the right to usurp legislative powers. The desirability of any type of legislation does not give us the constitutional right to enact it, much less to make it retroactive.

Most of what is said in the dissenting opinions is foreign to the questions in this case. Much of it is such that, if addressed to the legislative assembly as an argument favoring legislation along the lines indicated, it would be entitled to consideration by that body. But the Constitution gives no authority to this Court to enact legislation in any case and certainly not where the desired legislation was three times presented to the legislative assembly and three times rejected.

The case of Moses v. School District, 107 Mont. 300, 86 Pac. (2d) 407, 408, is relied upon in the dissenting opinions, but it has no bearing upon the question involved here. That case turned upon the fact that the plaintiff therein had contracted "that the board reserved the right to close the school for lack of attendance, which, when done, would make void the contract of employment." It was because of that provision of the contract, coupled with sections 1010 and 1044, Revised Codes, giving the board authority to close schools with an enrollment of fewer than five pupils, that ruled the majority of the court in the Moses case. It is competent for a person to waive the benefit of a statute enacted for his benefit

and in legal effect, palintiff in the Moses case waived the benefit of section 1075 by her contract.

For these reasons I am unable to agree with the views stated in the dissenting opinions, but concur in the opinion of Mr. Justice Choate.

I am authorized to say that Mr. Justice Choate concurs in these views.

Mr. Justice Cheadle (specially concurring).

I concur with the opinion of Mr. Justice Choate and join with Mr. Justice Angstman in his concurring opinion.

Mr. Chief Justice Adair (dissenting).

The powers of boards of trustees and the rights, tenure and status of teachers in the public schools of this state are fixed, limited and determined by the provisions of the School Code.

*Contract of Non-tenure Teachers.* The contract of a non-tenure teacher is for the period of one year or less. It *expires* annually. It must be *renewed* each year or the non-tenure teacher loses her employment. The board of school trustees is empowered to terminate such contract before its expiration only for the causes and in the manner contemplated by section 1085, Revised Codes of Montana of 1935.

*Contract of Tenure Teachers. After* the election of any teacher for the third consecutive year in any public school district in the state, such teacher so elected thereby acquires the status and rights of a tenure teacher. Sec. 1075, Rev. Codes. Such teacher's contract, by operation of law, becomes a continuing contract. *It does not expire. It requires no renewal.* It can be terminated by the board of school trustees only for the causes and in the manner contemplated by sections 1075 and 1085, Revised Codes.

*Cause and Hearing Necessary.* The unexpired contract of a teacher in the public schools may be terminated by the board of school trustees for cause only after hearing. State ex rel. Howard v. Ireland, 114 Mont. 488, 497, 138 Pac. (2d) 569.

In this case the evidence is free from conflict and the facts are undisputed.

*The Facts.* On April 25, 1945, while employed for the seventh consecutive year as a teacher in the Helena high school under contract with the defendant School District #1 of Lewis and Clark County, Montana, Violet M. Eastman received a notice signed by the clerk of the defendant school board reading: ''Dear Miss Eastman: The school board of District #1 at a meeting held last night, Tuesday, April 24, 1945, decided not to renew your contract for the 1945-46 school year. Yours very truly, J. F. McBride, Clerk.''

On May 11, 1945, Miss Eastman gave written notice to the defendant school district and to its trustees and clerk that she deemed the foregoing notice a nullity; that she deemed herself re-elected to teach in the district for the ensuing year; that she accepted the position and, at the opening of the school year, would be ready, willing and able to perform her duties.

On the opening day of the 1945-1946 school year Miss Eastman was present and tendered her services as a teacher to defendants and to their superintendent and principal. The tender and offer were rejected and, at all times since, she has been excluded from the schools of the district and denied employment as a teacher therein.

This suit was brought by Miss Eastman under the Uniform Judgments Act to determine her rights and status as a tenure teacher in the public schools of the district.

The case was tried before the Honorable William R. Taylor of Anaconda, judge presiding, who, after hearing the evidence, made and entered written findings of fact and conclusions of law.

*Trial Court's Findings.* The trial court found:

That for seven consecutive school terms, beginning in 1938, Violet M. Eastman taught in the defendant School District No. 1 under successive, written contracts of employment with said district;

That Miss Eastman is the holder of a life teacher's certificate,

granted and issued to her by the State Board of Educational Examiners of Montana, on December 1, 1934, authorizing her to teach in grades 6 to 12 in any district in this state;

That on April 24, 1945, at a duly noticed special meeting of the school board of the defendant district attended by all the trustees, the school board "by a majority vote of said trustees, determined not to renew plaintiff's contract, and instructed the clerk of such Board to so notify plaintiff."

·  That on the 25th·day of April, 1945, written notice was given to Miss Eastman that the board had decided "not to renew" her "contract for the 1945-46 school year."

"That Section 1075 of the Revised Codes of Montana 1935, provides, that, after the election of any teacher for the third, consecutive year in any school district in the State, such teacher, so elected shall be deemed re-elected from year to year thereafter, unless the board of trustees shall, by majority vote of its members, on or before the 1st day of May, give notice, in writing, to said teacher that he has been re-elected or that his services will not be required for the ensuing year."

*Trial Court's Conclusions.*  The trial court thereupon concluded that Miss Eastman is entitled to judgment against the defendants and to have her status declared as a teacher in the defendant school district pursuant to section 1075, Revised Codes, "for the reason that the written notice given plaintiff on April 25, 1945, that the school board had decided not to renew her contract, was not a clear, explicit, and unambiguous notice that her services would not be required for the ensuing year."

*The Judgment.*  Judgment in accordance with the foregoing findings of fact and conclusions of law was given and entered by the trial court, adjudging and declaring:

That for seven consecutive school terms, beginning in 1938 and ending June 30, 1945, Miss Eastman taught in the defendant school district under successive written contracts therewith;

That at no time did the defendant school district give to Miss Eastman any notice in writing "that she had been re-

elected or that her services would not be required for the ensuing year," as provided in section 1075, Revised Codes of Montana 1935;

That under section 1075, the plaintiff, Miss Eastman, "was and is deemed re-elected, by operation of law, to her position as a teacher in said School District #1 for the school year 1945-46, and at all times commencing on July 1st, 1945 and ending on June 30th, 1946, said plaintiff has been, now is, and will continue to be, *unless discharged for cause,* a duly qualified; and elected teacher in said School District, and as such entitled to the same position and the same salary and emoluments as she occupied and received for the school year 1944-1945."

The defendant school district and its trustees have appealed to this court from such judgment.

Defendants' brief sets forth seven specifications of error.

*Specifications 1, 2 and 3.* Specifications Nos. 1, 2 and 3 are predicated upon the admission of certain evidence claimed by defendants to contradict the approved minutes of the school board.

*Minutes of Meetings.* The first three specifications urge that the trial court erred: (1) in admitting in evidence "the rough draft of the minutes of the School Board, to *contradict* the approved minutes of the meeting of the School Board of April 19, 1945"; (2) in admitting in evidence "the rough draft of the minutes of the School Board, to *contradict* the approved minutes of the meeting of the School Board of April 24, 1945"; and (3) "In allowing the notes of the stenographer of the School Board to be read in evidence to *contradict* the approved minutes of the meetings of the School Board held on April 19 and April 24, 1945."

At the outset it must be remembered that the material facts in this case are wholly undisputed. The trial court's findings of fact set forth such material facts as are essential to decide this cause. To these findings of fact the defendants neither excepted nor objected. Each fact found is undisputed and sustained by uncontradicted evidence. Thus there is and can be

no question as to material facts or as to the sufficency of the evidence to sustain such facts.

On appeal to this court the presumption is that the judgment and findings of the trial court are correct. Van Voast v. Blaine County, Mont., 167 Pac. (2d) 563; Bickford v. Bickford, Mont., 158 Pac. (2d) 796, 797; State ex rel. Anderson v. Gile, Mont., 172 Pac. (2d) 583; Boggs v. Boggs, Mont., 177 Pac. (2d) 869.

The approved minutes of the school board show that on April 19, 1945, the new board of trustees of the defendant school board held its regular annual organization meeting which convened at 7:30 o'clock in the evening with all of the trustees present and that such meeting adjourned at 10:40 o'clock p. m. The minutes do not show any action taken by the trustees at such regular annual meeting concerning the plaintiff Miss Eastman or her contract or her employment.

The approved minutes of the school board show that on the night of April 19, 1945, and after the adjournment of the board's regular meeting, discussion was had by six school trustees "as to a special meeting to consider salaries of supervisors and to act on the matter of whether to cancel the Violet M. Eastman and Earl S. Fahland contracts," and that at the request of the six trustees the chairman of the board called a special meeting of the board for 7:30 o'clock p. m. on April 24, 1945, and directed the clerk to give notice thereof.

The approved minutes of the school board show that at a special meeting held by the board on the evening of April 24, 1945, "a motion was made by Trustee Carlson that Miss Violet M. Eastman's contract not be renewed for 1945-1946, and that she be given written notice of this action through the Clerk and the Superintendent" and that such motion was duly seconded and carried "with Trustees Bowden, Carlson, Larson and Neill voting 'Yes' and Trustees Woodard and Douglass voting 'No.' Chairman Young did not vote."

It is quite evident that the trial court accepted the approved minutes of the board and there is nothing in the court's findings that in any manner conflict with the board's minutes.

92

The clerk's "rough draft" of the board's regular meeting of April 19th and of its special meeting of April 24th, being plaintiff's exhibits Nos. 5 and 6A, B and C, were taken in part by the clerk of the school board on his "sheet while sitting at the board table" and in part from the notes of the stenographer of the school board made by her while attending such meetings.

The clerk's "rough draft," written on loose sheets of letter-size paper, was written either during the meetings in question or immediately after the adjournment thereof and constituted the only record of the action of the trustees at such meetings that had been made prior to the commencement of this suit. It was not until after suit had been instituted that the minutes of the board's meetings of April 19th and 24th were entered in the record-book of the school district or approved by the board. Hence, at the time this suit was commenced there were no "approved minutes" of the meetings in question.

Section 1049, Revised Codes, makes it the duty of the district clerk "To attend all meetings of the board of trustees;" and to "keep his record in a book to be furnished by the board of trustees." Section 1050, Revised Codes, provides that, "At each annual school meeting the district clerk shall present his record-book for public inspection, and shall make a statement of the * * * action of the trustees, *and such record must always be open for public inspection.*" (Emphasis mine.)

Defendants wholly failed to show, either in their briefs or oral argument, wherein the clerk's "rough draft" or the stenographer's notes taken at and during the meetings in question *contradict* "the approved minutes" of the board on any fact, issue or point material to or in this case, or wherein any prejudice to defendants could have resulted from the admission of the evidence complained of.

*Regular Annual Meeting.* The regular meeting of the school board held in the evening of April 19, 1945, was attended by all seven school trustees as well as by numerous other persons, including Linus Carleton, superintendent of Helena schools, James A. Poore, superintendent of buildings and grounds, and J. F.

McBride, clerk of the school board, Miss Carolyn Carrico, stenographer of the board, a committee from the Helena teachers' union consisting of Mr. Earl Fahland and three other teachers, and a committee from the Helena Trades and Labor Assembly consisting of four longtime citizens and residents of the city of Helena.

The school trustees were then informed that the members of the committees were attending such annual organization meeting of the board of school trustees at the request of their respective organizations.

The committee from the teachers' union informed the trustees that the committee was there in an endeavor to create and maintain a better feeling between the teachers, supervisors and all concerned.

The committee from the Helena Trades and Labor Assembly informed the trustees that the members of the assembly were interested in education and had appointed the committee to attend such meeting of the board of school trustees, as well as all future meetings of the trustees for the purpose of "seeing what took place" and to report back to the assembly.

The minutes of the previous meeting of the board were read, showing that on March 28, 1945, "Trustee Carlson moved that the lists of contracts be approved as outlined with the salary schedule with the exception of Miss Violet Eastman and Mr. Earl Fahland." Both teachers mentioned in the motion were then members of the American Federation of Teachers. They were also members of the Helena local of the teachers' union, of which Miss Eastman was secretary and Mr. Fahland the treasurer.

At 10:40 o'clock p. m. the regular meeting adjourned.

Upon adjournment of such regular meeting the members of the committees from the teachers' union and the Helena Trades and Labor Assembly inquired of the board of trustees as to when the next meeting of the board would occur, advising the board that the committees desired to attend all future meetings of the board. Thereupon the trustees informed the members

of the committees that they would be permitted to attend the future meetings of the board; that some of the trustees expected to be absent from the city, due to which fact in all probability "they won't have any meetings before a month from that meeting of April 19th." The trustees also informed the members of the committees that the board would notify them of the holding of its next meeting; that such meeting would be duly advertised and that a proper notice in advance thereof would appear in the newspapers. With such assurances from the trustees, the eight persons comprising the two committees left the board room and went to their respective homes as did the board's stenographer Miss Carrico.

*Secret Meeting.* Six of the trustees tarried after the adjournment and closing of the regular annual meeting of the board and after the board's stenographer and the two committees had departed and, with the room thus cleared of all committee members, the six trustees then proceeded to quietly discuss the calling of a special meeting of the board to be held five days later, and directed the clerk to send written notice to each of the trustees of a special meeting called for April 24th. Pursuant to such directions the clerk, on April 21, 1945, sent a written notice to each trustee reading: "A special meeting of the board of trustees of Helena High School District No. 1 will be held on Tuesday, April 24th at 7:30 o'clock. J. F. McBride, Clerk."

*Special Meeting.* No notice of the calling or holding of such special meeting of April 24th was given any member of the committees which had attended the regular annual meeting of the school board of April 19th nor did any of them, nor did Miss Eastman, have or receive any knowledge of the call for or the holding of such special meeting, nor did any notice thereof appear in the newspapers. Thus did the school trustees break faith with and fail to keep their promise made to the members of the committees.

On the day following the special meeting, Miss Eastman received the letter from the clerk of the school board advising

her that at a meeting held the night before the board had "decided not to renew her contract for the 1945-46 school year" which was the first information or knowledge she had of the special meeting of April 24th or that same was to be held. Following receipt of the clerk's letters the records of the school board were examined, but they show no charges or accusations of any sort made or filed against Miss Eastman, nor do they show any cause or reason for the board's action in attempting to dispense with her services.

*Specifications 4, 5 and 6.* Defendants' specifications Nos. 4, 5 and 6 are that the trial court erred (4) "in denying defendants' motion for non-suit and dismissal"; (5) "in denying defendants' motion for judgment" and (6) "in entering judgment for plaintiff."

*Motion for Nonsuit.* At the close of plaintiff's case the defendants moved for a judgment of dismissal and nonsuit upon the grounds: (1) That the complaint fails to state facts sufficient to warrant the granting of any relief by way of declaratory judgment and (2) that it appears from undisputed and undenied evidence that the defendant trustees, "by a majority vote prior to the 1st day of May, 1945, declared the services of the plaintiff Violet M. Eastman, would no longer be required," and that written notice to that effect had been served upon her, by reason whereof plaintiff is not entitled to any relief under section 1075, Revised Codes. The trial court denied the motion and such action is assigned as error.

*Motion for Judgment.* At the conclusion of all the evidence in the case, defendants moved for judgment upon the same grounds set forth in their motion for nonsuit. The trial court denied the motion and such action is assigned as error.

The determination of defendants' specifications Nos. 4, 5 and 6, supra, involves the public policy of this state respecting the powers conferred upon its boards of trustees and also the contract, status and tenure of a teacher in the public schools of Montana, who, after election for the third consecutive year in

any school district in the state, continues teaching therein from year to year thereafter.

*Powers of Trustees.* A school district is a public corporation but with very limited powers. It may, through its board, exercise only such authority as is conferred by law, either expressly or by necessary implication. Finley v. School District No. 1, 51 Mont. 411, 153 Pac. 1010.

School trustees can only exercise such powers as the law confers upon them. The statute granting the power must be regarded as both a grant and *a limitation upon the powers of the board.* McNair v. School District No. 1, 87 Mont. 423, 425, 288 Pac. 188, 69 A. L. R. 866; Jay v. School District No. 1, 24 Mont. 219, 232, 61 Pac. 250. The trustees are bound to know that they cannot go beyond the limitations which the law has placed upon them. Farbo v. School District No. 1 of Toole County, 95 Mont. 531, 28 Pac. (2d) 455.

The law of this jurisdiction has long conferred upon school trustees the power to employ and the power to discharge teachers, but the exercise of both powers is subject to certain specific restrictions and limitations.

*Power to Employ Teachers.* In conferring upon school boards the power to employ teachers the legislature specifically limited the power by providing "that no teacher shall be employed except under resolution agreed to by a majority of the board of trustees at a speical or regular meeting; nor unless such teacher be the holder of a legal teacher's certificate in full force and effect." Subsection 2 of section 1015, Rev. Codes.

*Power to Discharge Teachers.* Likewise, in conferring upon school boards the power to discharge teachers, the legislature, by necessary implication, limited the exercise of the power to cases wherein *good cause* for dismissal was first shown by expressly providing that upon dismissal the "teacher may appeal to the county superintendent; and if the superintendent decides that the removal was made *without good cause,* the teacher so removed must be reinstated * * *." Sec. 1085, Rev. Codes.

From the earliest territorial days the law has required that

there must first exist "sufficient cause" before a board of trustees may terminate the teacher's contract or discharge, dismiss or remove him from office. Section 27, page 625, of the Codified Statutes of Montana of 1871 provided: "Every board of trustees, unless otherwise expressly provided by law, shall have power, * * * to employ, *and for sufficient cause* dismiss teachers, mechanics, and laborers * * *." (Emphasis. mine.) This law was carried forward by repeated re-enactments from 1871 to 1895 when the legislature enacted section 1797 of the Political Code of 1895, which is now section 1015, Revised Codes of Montana of 1935.

The same legislature (1895) enacted section 1848 of the Polictical Code of 1895, which is now section 1085, Revised Codes of Montana of 1935, and makes provision for the reinstatement of a teacher who has been dismissed or removed from office *without cause*. The enactment of section 1848, supra, rendered surplusage the words "and for sufficient cause" originally appearing in section 27, page 625, of the Codified Statutes of Montana of 1871 and accounts for the elimination of such quoted words in the re-enactment of the statute as section 1797 of the Political Code of 1895, now being section 1015, Revised Codes of Montana of 1935.

Thus it is clear that at no time has the legislature conferred upon the school boards in this jurisdiction the power to discharge, dismiss, remove or terminate a teacher's contract during the life of such contract unless and until *good cause* is first shown. State ex rel. Howard v. Ireland, supra.

Section 1085, Revised Codes, enumerates certain causes arising out of personal or professional conduct which will warrant the dismissal of a teacher.

Section 1097, Revised Codes, enumerates certain *causes* for the revocation and suspension of teachers' certificates but requires that *good cause* be first shown by expressly providing that "before any such revocation, the holder shall be served * * * with a written statement of the charges against him, and

shall have an opportunity for defense before the state board of educational examiners.''

Section 1075, Revised Codes, provides that, ''After the election of any teacher * * * for the third consecutive year in any school.district in the state, such teacher * * * so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its members on or before the first day of May give notice in writing to said teacher * * * that his services will not be required for the ensuing year; * * *.'' Thus does section 1075 enumerate *a cause* not found in section 1085 which, when existent, will empower the board of trustees to terminate the continuing contract of a tenure teacher.

Section 1262.39, Revised Codes, empowers the board of trustees of any school district to appoint a superintendent of schools and provides that his contract shall thereafter ''be deemed renewed'' for a further term of one year and successively thereafter for like terms of one year each ''unless the board of trustees shall by a majority vote of its members give written notice to such superintendent on or before the 1st day of February of the last year of his current term that his services will not be required after the expiration of his existing contract.''

The similarity between the language and provisions of sections 1075 and 1262.39, Revised Codes, is apparent.

In construing section 1262.39, Revised Codes, supra, this court, in State ex rel. Howard v. Ireland, supra [114 Mont. 488, 138 Pac. (2d) 572], said: ''The maintenance of good schools is the work and function of the board, with which they are entrusted. The selection of good personnel on the teaching and superivising staff is a most important part of that function. Without the power of removal of any so selected, *when cause exists therefor,* the board would be seriously handicapped in the performance of its trust. While not specially provided for by statute, the power of removal is necessarily implied. *It should not be exercised arbitrarily. In justice and fairness to the appointee, his rights should be given consideration. There*

*should not be an abrupt termination of his service during the term without inquiry first to determine whether cause exists. Such determination cannot be fairly made by the board except upon hearing had.*

"*There is no provision by statute for such hearing; however, we have in this state a well-defined policy requiring hearing such cases.* The decisions of this court have so declared. First in Kellison v. School District, 20 Mont. 153, 50 Pac. 421, dealing with the dismissal of a teacher, the policy was declared as dictated by common justice, which means that without a hearing justice would not be done. In order to make clear that a hearing was had, of legal character and such as gave the board jurisdiction to make an order of dismissal, the court carefully enumerates the various steps in the proceeding, the manner in which the hearing was conducted, and the arrival at a decision thereon by the board. This all was regarded by the court as necessarily found to have occurred in order to give the basis of the conclusion that there had been a legal dismissal of the teacher.

"Since then, whenever the question again has come before this court, the same rule as declared in the Kellison case has been adhered to. *The requirement of hearing before the dismissal from service of one in public office or public position for a fixed term of tenure has been declared as fundamental policy in this state and as required by law. It has become so well established that only an act of legislation would warrant any deviation from the rule.* State ex rel. Rankin v. Madison State Bank, 68 Mont. 342, 349, 218 Pac. 652; 21 C. J. S., Courts, sec. 186, p. 298; Moore v. Chalmers-Galloway Live Stock Co., 90 Colo. 548, 10 Pac. (2d) 950. * * *

"The rule in Montana is in accord with the general rule prevailing in most jurisdictions. 46 C. J. 989, sec. 160; State ex rel. Hill v. Sinclair, 103 Kan. 480, 175 Pac. 41. For statement of the rule as applied to teachers, see 56 C. J. 405, sec. 343; and the following court decisions: Public School District v. Holson, 31 Ariz. 291, 252 Pac. 509; Baird v. School District,

41 Wyo. 451, 287 Pac. 308; School District v. Parker, 82 Colo. 385, 260 Pac. 521; Finch v. School District, 225 Mich. 674, 196 N. W. 532; People ex rel. Callahan v. Board of Education, 174 N. Y. 169, 66 N. E. 674.'' (Emphasis mine.)

In the recent case of Kuehn v. School District No. 70, 1946, 221 Minn. 443, 22 N. W. (2d) 220, 221, the school board sought to terminate the contract of a non-tenure teacher and to dismiss her by sending her a notice reciting that she had not put in full hours at school and that her services were not satisfactory and concluding: ''Therefore we expel you as teacher of district 70.'' In affirming judgment for the teacher, the Supreme Court of Minnesota said:

''No hearing was granted plaintiff on the charges against her. Upon receipt of the above notice, she informed the board that she was ready, willing, and able to perform her contract. Her offer was not accepted.

''*She commenced this action* for the balance due on the contract *upon the theory that the action of the school board had been arbitrary and unwarranted.* The case was tried before a jury. *The court instructed the jury that if it found that the action of the board had been arbitrary and capricious or in bad faith it should find for plaintiff.* The jury found for plaintiff, and defendant moved for a new trial. This was denied solely on the ground that, since in dismissing a teacher the board acted in a quasi-judicial capacity, plaintiff was entitled to a notice and hearing before dismissal and that the action of the board in not proceeding in this manner was lacking due process of law as arbitrary and capricious. The court did not pass on the sufficiency of the evidence or the credibility of plaintiff's testimony, since *the denial of a hearing was conclusive that the board's action was arbitrary.*

''Defendant has assigned as error this ruling by the court.

''Defendant has the statutory power to discharge 'for cause.' Minn. St. 1941, sec. 125.06, subd. 10, Mason. St. 1927, sec. 2815(5) [Minn. St. 1945 and M. S. A. sec. 125.06, subd. 10.]

''The statutes do not provide a procedure for the removal of

a nontenure teacher 'for cause'. *However, even though no method of procedure is set out in the statutes for the guidance of the school board, a teacher is, nevertheless, entitled to notice of charges made against him and a fair hearing before an impartial board.* Anthony v. Phoenix Union H. S. District, 55 Ariz. 265, 100 Pac. (2d) 988; School District v. McCoy, 30 Kan. 268, 1 Pac. 97, 46 Am. Rep. 92; Report of Attorney General 1938, Opinion No. 230, August 24, 1938. See, also, State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677.'' (Emphasis mine.)

*Construction of School Code.* The public policy of this state respecting the matters involved is declared in the various sections of the School Code. These sections must be read together for the public policy is ascertained, not from the wording of any particular section (State ex rel. Malott v. Board of Com'rs of Cascade County, 89 Mont. 37, 296 Pac. 1) but from a consideration of the School Code as a whole and the viewing of every material part thereof. Aleksich v. Industrial Accident Fund, 116 Mont. 127, 151 Pac. (2d) 1016; Rocky Mountain Elevator Co. v. Bammel, 106 Mont. 407, 81 Pac. (2d) 673; Moses v. School District No. 53, Lincoln County, 107 Mont. 300, 86 Pac. (2d) 407; State ex rel. Dean v. Brandjord, 108 Mont. 447, 92 Pac. (2d) 273; State ex rel. Roundup Coal Mining Co. v. Industrial Accident Board, 94 Mont. 386, 23 Pac. (2d) 253; State ex rel. Valley Center Drain Dist. v. Board of Com'rs of Big Horn County, 100 Mont. 581, 51 Pac. (2d) 635; Great Northern Ry. Co. v. United States, 315 U. S. 262, 62 S. Ct. 529, 86 L. Ed. 836.

The majority opinion fails to read together the various sections of the School Code and particularly sections 1015, 1075, 1085, 1097 and 1262.39, Revised Codes, but on the contrary it segregates from the School Code subdivision 2 of section 1015, and from the wording of such particular limited subdivision determines that the law places no restrictions or limitations upon the power of school boards to terminate the continuing contract and to dispense with the services of a tenure teacher.

*Annual Election Plan.* Prior to 1913 there were no tenure teachers in this jurisdiction. All teachers then were subjected to the Damoclean process of annual contract renewal. All were employed under the *annual election plan* whereby the election of teachers by the board of trustees was an annual event. A formal contract in writing was executed in duplicate each year by the teacher and by the chairman of the board. Such contract was for the period of one school year or less. Upon the expiration of the time specified therein the contract expired and became a dead letter. Thereafter the board of trustees was under no obigation to enter into a new contract with the teacher. Thus did the teacher's right to teach in the school district expire with the expiration of the formal written contract entered into between the teacher and the district.

*Continuing Contract Plan.* In 1913 the policy of the state was changed by the enactment of a complete School Code, being Chapter 76, Laws of 1913, and comprising some 110 pages of the 1913 session laws. Sections 801, 805 and 905 of such School Code set forth provisions entirely new to this state. These three sections have been since re-enacted and are now sections 1075, 1085 and 1097, Revised Codes of Montana, 1935.

Section 801 of the School Code (1913) provided: "Tenure of Office of Teachers.—After election of any teacher or principal for the second consecutive year in any district in the state such teacher or principal so elected shall be deemed re-elected from year to year thereafter unless the board of trustees shall by a majority vote of its members on or before the first day of May give notice in writing to such teacher or principal that his services will not be required for the ensuing year; provided, that in case of principals in charge of school systems such notice shall be given on or before February 1st."

Section 801, supra, established a statutory probationary period for teachers. It gave to a teacher who had continuously served the statutory probationary period as a teacher in any school district and who was thereafter re-elected certain rights and status not enjoyed by a probationary or non-tenure teacher.

*After* serving the statutory probationary period and the election of the teacher in the same school district for the succeeding school year, then by operation of law such teacher so elected "shall be deemed re-elected from year to year thereafter" unless the board of trustees give to the teacher timely notice in writing that "his services will not be required for the ensuing year." Since its enactment the provisions of section 801 of the School Code, supra, have become a part of every tenure teacher's contract of employment.

The plain intention of the legislature in enacting section 801, supra, of the School Code, Ch. 76, Laws of 1913, was to provide for the tenure of office of capable and experienced teachers in the public schools after their re-election and satisfactory service in the same school district for the probationary period declared in the law. In adopting section 801 the legislature wrote and adopted its own title for the section, namely "Tenure of Office of Teachers." The rule in this jurisdiction is that, when necessary, recourse may be had to the title of an Act in order to determine the legislative intention. See Nangle v. Northern Pac. Ry. Co., 96 Mont. 512, 519, 522, 32 Pac. (2d) 11. The title of an Act is indicative of legislative intent in passing it (State ex rel. Smith v. Duncan, 55 Mont. 376, 177 Pac. 248), unless the title was not in the Act at the time it was adopted by the law makers but was added by the code commissioner, in which case of course the title could not aid the court in determining the legislative intent. State ex rel. Palagi v. Regan, 113 Mont. 343, 126 Pac. (2d) 818.

Section 801 of the School Code was re-enacted as section 1075 of the Revised Codes of 1921 and thereafter amended by the enactment of Chapter 87, Laws of 1927, entitled: "An Act to Amend Section 1075 of the Revised Codes of the State of Montana 1921, Relating to the Tenure of Office of Teachers." Here again is manifest, in the title of the 1927 Act, the intent of the legislature to provide for tenure of office for the teachers to whom the provisions apply.

The legislature of 1913 and the legislature of 1927 both

clearly intended that the law should provide tenure of office and protection for teachers continuing to serve the district after the statutory probationary period.

In Le Clair v. School District No. 28, 74 Mont. 385, 240 Pac. 391, decided in 1925, this court, in an opinion by Mr. Justice Matthews, applied the statute (sec. 1075) and protected a tenure teacher's rights and status thereunder.

In McBride v. School District No. 2, 88 Mont. 110, 290 Pac. 252, 254, decided in 1930, this court, in another opinion by Mr. Justice Matthews, again applied the statute and afforded a tenure teacher the protection provided for therein saying, "The provisions of section 1075, as amended, became a part of the contract of employment and were binding upon both the teacher and the board of trustees (24 R. C. L. 618), and *the notice of dismissal therein provided for must be clear and explicit* (46 C. J. 553). As no such notice was given, plaintiff was automatically re-elected for the school year beginning in September, 1928, and was, therefore, entitled to recover the amount of salary due her for the first month of that year, with interest, as declared by the judgment." (Emphasis mine.)

In Day v. School District No. 21, 98 Mont. 207, 38 Pac. (2d) 595, 597, decided in 1934, this court, in an opinion by Mr. Justice Stewart, applied the statute and protected a tenure teacher's rights and status thereunder saying, "We are unable to find anything in section 1075, as amended, supra, that would justify depriving plaintiff of the benefits conferred thereby. When she showed that she had been elected by the board, that she had taught three consecutive years immediately preceding the year 1932, and that she possessed the other requisite qualifications prescribed by law, she brought herself within the meaning of the statute and was entitled to the privileges and benefits thereof, including a legal and timely notice. She should not be deprived of these rights by reason of the fact that the defendant board, in failing to give her a written contract, had failed to do its duty. * * *

"We are of the opinion that in February, 1932, plaintiff occupied the status of a teacher in contemplation of the Legislature when it declared in section 1075, supra, that, where a teacher has been elected for three consecutive years in any school district, she shall be 'deemed re-elected from year to year,' unless the notice therein provided for shall have been given. It follows that she was entitled to a notice of her dismissal in accordance with the provisions of that act. * * *

"In accordance with the foregoing authorities, we are forced to the conclusion that the notice in question here was invalid and ineffective for the purpose of dismissing the plaintiff. It did not constitute a legal notice to her that her services were no longer required."

In State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 Pac. (2d) 306, 311, decided in 1939, this court, in an opinion by Chief Justice Johnson, remarked as to the protection afforded a teacher by the provisions of section 1075, saying: "A like result as to the rights of one for whose protection a law was enacted was reached by this court in Day v. School District No. 21, 98 Mont. 207, 38 Pac. (2d) 595. In that case the question was the application of the public school teachers' tenure Act, section 1075, Revised Codes. There this court held unanimously that the plaintiff was entitled to the benefit of the statute, and that *in the absence of the statutory notice of dismissal her contract of employment continued.*" (Emphasis mine.)

In Smith v. School District No. 18, 115 Mont. 102, 139 Pac. (2d) 518, 523, decided in 1943, this court, in an opinion by Mr. Justice Adair, applied the provisions of section 1075 and protected the rights and status of a tenure teacher thereunder, saying: "The purpose of enacting the Teacher Tenure Act (sec. 1075) is not merely to insure teaching employment but it is also to insure to teachers who have held teaching positions for three or more consecutive years, security in the position, the grade or the status which they have thus attained."

For over 34 years the particular provisions of section 1075, Revised Codes, involved herein have been the law of this state.

During that time such law has furnished security and protection to the tenure teachers of this state. Now, in this year of our Lord 1947, it pleases my learned associates to attempt to minimize the efficacy of section 1075, Revised Codes, by referring to it as "The *so-called* teachers' tenure Act."

There is nothing "so-called" about the teachers' tenure Act. It is a genuine tenure law. There is nothing wrong with it. The present evil results from the failure of the judges to ascertain and declare what is in both terms and substance contained therein. (Sec. 10519.) For these many years the teachers' tenure Act has been a real law affording real protection to tenure teachers. Now, by judicial construction, does a majority of this court convert a *real* teachers' tenure law into a "so-called" teachers' tenure Act, denying the protection heretofore afforded as well as defeating the very object and purpose of the legislation.

In the enactment of Chapter 87, Laws of 1927, the provisions of Section 801, supra, of the School Code, were retained but same became applicable only "After the election of any teacher * * * for the *third* consecutive year in any school district in the state," the probationary period being increased to three years. A clause was also inserted in the law to *permit* the board of trustees to obtain from the tenure teacher an expression as to the teacher's intention for the ensuing year by permitting the board, on or before the first day of May, to give notice in writing to the said tenure teacher that he has been re-elected and requiring that the teacher, within twenty days after the receipt of such notice, notify the board of trustees in writing of his acceptance of the position for the ensuing year under penalty of having his failure to give such notice "regarded as conclusive evidence of his non-acceptance of the position." With these latter amendments this case is not concerned. However, the 1927 Act also provided that the re-election of the tenure teacher should be "at the same salary."

*After* her election for the third consecutive year (1941-1942) Miss Eastman acquired the status of a tenure teacher, and as

such, the statutory provisions set forth in section 1075 became a part of her contract of employment. *After* her election for such third consecutive year in the same school district the present law says that, "such teacher * * * shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its members on or before the first day of May give .notice in writing to said teacher * * * that his services will not be required for the ensuing year; * * *." Sec. 1075.

"*Services will not be required.*" The cause for which a board of trustees may terminate a tenure teacher's continuing contract of employment and for which they are empowered to take from him the status, rights and benefits to which he is entitled under the provisions of section 1075 is, "that his services will not be required for the ensuing year" and the notice in writing provided for in the statute must be to the effect "that his services will not be required for the ensuing year." These words mean exactly what they say—no more—no less. The lawmakers used the quoted words in the ordinary sense and with the meaning commonly attributed to them.

The word "require" has been defined as follows: "Have need of, or need (as, he *requires* medical care; how much time do you *require?* 'Ev'n in his pastimes he *requires* a friend, To warn,' Cowper's 'Tirocinuim,' 607''), *The New Century Dictionary,* Vol. 2, p. 1531; "To need, to be under a necessity; as, man *requires* to feed or to be fed; a fact *requires* to be stated." Webster's New International Dictionary, 2nd Ed.

When a person *requires* medical care, he has *need* for medical care, that is, he *needs* a doctor. "How much time do you *require?*" means "how much time do you *need?*" "He *requires* a friend" means "he *needs* a friend." Thus the verb "required" in its ordinary sense, means *to have need of.*

In Hull v. Holloway, 58 Conn. 210, 20 A. 445, 447, the court said the word "require" is "frequently and correctly used in the sense of 'to need' or 'to be requisite,' and we adopt this definition for the purposes of this case." In State ex rel.

Lucero v. Marron, 17 N. M. 304, 128 Pac. 485, 490, the word "required" as used in the provision of the Constitution, as to appropriations for expenses *required* by law, was held to mean "to have need or necessity for." See W. H. Purcell Co. v. Sage, 200 Ill. 342, 343, 65 N. E. 723; Commonwealth v. Chesapeake & O. R. Co., 128 Ky. 542, 108 S. W. 851; Flint & P. M. R. Co. v. Detroit & B. C. R. Co., 64 Mich. 350, 31 N. W. 281; People v. Central Pac. Ry. Co., 76 Cal. 29, 18 Pac. 90.

.The provisions of section 1075, Revised Codes, enact into law the rule which recognizes the right of school authorities, under a tenure statute, to terminate the continuing contract of a tenure teacher when there will be no need for the services of the teacher in the particular department or school district for the ensuing year, for example, when through a program of economy adopted in good faith, or through a lessening of the number of pupils, or through the consolidation of schools, or through the abolition of an entire department in a school. "As a limitation upon this rule, it should be noted, however, that departments .in a school may not be abolished merely to circumvent the provisions of a tenure act and to accomplish the dismissal of teachers for arbitrary political reasons by unlawful subterfuge, although of course, if the abolition of a department takes place in good faith for financial or educational reasons, it will have the effect of a legal dismissal of the teachers. Even though by statute a justifiable decrease in the number of teaching positions is recognized as ground for the cancelation of a permanent tenure contract, the retention of a probationary teacher and the dismissal of a permanent employee qualified to teach in the position of the non-tenure teacher is not authorized by such a statutory provision." 47 Am. Jur., pp. 397 et seq., sec. 139.

From the foregoing it is apparent that before the board of trustees could be said to have the power or jurisdiction to give to a tenure teacher with a continuing contract of employment with the district the notice prescribed by section 1075, it must first have been made to appear, to the board, honestly

and in good faith, that there were conditions and circumstances outside the teacher's control whereby the district or school will have no need and no necessity for the services of a teacher in the position, office or department theretofore occupied by such tenure teacher. With such facts first appearing, the board may, by a majority vote of its members, decide and determine that the district or school will have no need and no necessity for the services of a teacher therein for the ensuing year and, thereupon, give timely notice in writing to such teacher "that his services will not be required for the ensuing year," and, by following such prescribed procedure, terminate the tenure teacher's continuing contract.

*Notice Invalid.* The notice to Miss Eastman was not the notice prescribed by section 1075, Revised Codes, nor was it given because the board had determined that for the ensuing year the services of a teacher would not be needed in the office or position continuously held and occupied for the preceding seven years by Miss Eastman. The board's notice was merely to the effect that at a meeting held the preceding night it had "decided not to *renew* your contract for the 1945-46 school year." The fact statements appearing in the notice were true. The board did hold a special and secret meeting the night before. It did, at such meeting, decide not to *renew* Miss Eastman's contract for the 1945-46 school year. But Miss Eastman's contract did not need to be *renewed.* It is a continuing contract. It continues from year to year at the same salary. It is the formal contract of the non-tenure or probationary teacher that requires annual renewal and not the continuing contract of a tenure teacher which, by operation of law, automatically continues in force "from year to year thereafter at the same salary." Sec. 1075, Rev. Codes.

Nothing was accomplished by the board's decision "not to *renew*" the tenure teacher's continuing contract. In making its decision "not to renew" the contract, the board did but an idle act and the notice given Miss Eastman of the doing of such wholly unnecessary act is a nullity and wholly ineffective.

Such notice fails to meet the requirements of the statute or to terminate her continuing contract or to deprive her of her status and standing as a tenure teacher in the defendant school district.

The issues before the court involve not only the *words* employed in the school board's notice but also the *jurisdiction* of the board to give the notice by which they sought to dispense with the teacher's services. As was said by this court in State ex rel. Howard v. Ireland, supra:

"A hearing in advance of removal being required, and none such having been had, the order of dismissal made by the board of trustees was null and void. * * * The purpose of such hearing is to avoid the harm that may come from a *dismissal where no good cause exists.* * * * *There must be hearing before the board of trustees to vest them with jurisdiction to act.*" (Emphasis mine.)

The majority opinion, after quoting section 1075, Revised Codes, continues with the statement, "the question presented is whether the notice given plaintiff by the school board that it 'decided not to renew your contract' is substantially the equivalent of the notice required by section 1075, namely a notice that 'his services will not be required for the ensuing year'" and continues "it would almost seem that the very asking of the question is sufficient to indicate its answer * * *." (No authorities are cited.) This form of argument shifts the burden of proof from the one who asserts to the one who does not agree with it.

The majority opinion then announces that plaintiff cannot teach without a contract but it fails to recognize the fact that she had and has had a continuing contract at all times after she completed the statutory three-year probationary period of service in the district and that such continuing contract so acquired by her, by complying with the requirements of the law, continues in full force and effect *until and unless* it is terminated in the manner and for the reasons set forth in the law. Sec. 1075, Rev. Codes.

Where a board has a given power granted expressly or impliedly and no mode of exercise thereof indicated, it may in its discretion select any appropriate mode of exercise or course of procedure (Simpson v. Silver Bow County, 87 Mont. 83, 92, 285 Pac. 195), and conversely, when a board has a given power and the manner of its exercise is expressly prescribed, such mode is exclusive and must be followed. School District v. Bear, 106 Okl. 172, 233 Pac. 427, 38 A. L. R. 1413.

As before stated, there was no necessity to *renew* Miss Eastman's continuing contract with the district and the refusal of the new school board to *renew* such contract did not effect a termination thereof, nor did such action constitute a dismissal within the purview of the statute (sec. 1085) prescribing the cause and manner of dismissal of teachers. 47 Am. Jur. 387; Marion v. Board of Education, 97 Cal. 606, 32 Pac. 643, 20 L. R. A. 197.

The majority opinion disregards the word "required" in section 1075. It not only reads such word out of the statute and out of the contract of Violet M. Eastman, but it reads the word out of the contract of every other public school teacher in Montana who has attained tenure status. It construes the word "required" to be synonymous with the word "desired" and, in effect, holds that if the board of trustees by a majority vote of its members direct its clerk to send a notice in writing to a teacher who has acquired a continuing contract with the district stating "that his services will not be *desired* [by the board] for the ensuing year," such notice would be the equivalent and mean the same as a notice stating "that his services will not be *required* for the ensuing year." Such torture of the English language does violence to the very purpose and object that prompted the enactment of sections 801 and 805 of the School Code of 1913 carried forward as sections 1075 and 1085 of the Revised Codes of 1935.

*Tenure of Office Legislation.* In 1873 the headmaster of Rugby School in England was dismissed by the new board of trustees who gave no reason for their action, contending—as

the defendants do here—that they possess *arbitrary powers* of dismissal. The discharged teacher invoked the gracious power of an equity court seeking reinstatment. The Vice-Chancellor of that court made him this answer: "It is, in my opinion, clear that the plaintiff, and all other masters of the great public schools to which the Act of 1868 applies, are subject to the control of the new governing body of each school, and that they hold their offices merely at the pleasure of the governing body, and are, consequently, liable to be dismissed without notice, and without any reason being assigned." Hayman v. Governors of Rugby School, 30 L. T. 217 (Eq. 1874).

In effect, the headmaster was told, in the above case, that a teacher is as much at the mercy of the board of trustees as a coachman is at the mercy of his master and can be dismissed with or without reason.

The above decision sounded the keynote of the struggle that has since continued for legislation providing some measure of security and tenure of teachers in their position.

Irrespective of what may have been the law in England, at no time have public school boards in this state ever been clothed with the *arbitrary power* to remove or terminate the contracts of school teachers *without cause.*

Arbitrary action is un-American on any theory and I find nothing in the law of this state which lends any support whatever to the doctrine that the trustees of our public schools may, without cause or reason, exercise the arbitrary powers of dismissal. "'Arbitrary," according to Webster's New International Dictionary, is "Despotic; absolute in power; bound by no law; tyrannical; as, an *arbitrary* prince or government." As defined by the Standard Dictionary, "arbitrary" means: "Fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on will alone; absolutely in power; capriciously; tyrannical; despotic." Central of Georgia R. Co. v. Note, 131

Ga. 166, 62 S. E. 164, 170; King v. Falls County, Tex. Civ. App., 42 S. W. (2d) 481, 482.

"Enactment of teachers' tenure laws can be justified upon the theory that their purpose is to promote good order and the welfare of the state and the school system by preventing the removal of capable and experienced teachers by political whims." 47 Am. Jur., "Schools," sec. 129, p. 390.

It is to secure to the citizens of the state a competent and efficient school system by preventing dismissal of experienced and capable teachers without just cause that has led to the enactment of such laws. 127 A. L. R. 1300.

What cause or reason motivated four of the trustees to vote for the motion or resolution which was intended to give Violet M. Eastman her "walking papers" and to dispense with her services as a teacher in the public schools of the defendant district?

*Qualifications.* The plaintiff, Violet M. Eastman, is a graduate of Northwestern University, holding the degree of Bachelor of Arts therefrom; she has also attended and completed courses of study in the University of Minnesota, the University of Montana, the University of Washington, and the University of Southern California. She is the holder of a teacher's life certificate issued by the state of Montana, which certificate is in full force and effect.

The political history of the state discloses that at the general election held in Montana on November 7, 1944, over 92,000 qualified electors of this state approved Miss Eastman's qualifications by voting for her for the high office of superintendent of public instruction of the state of Montana, she having been duly nominated for such office as the candidate of one of the two major political parties of the state.

*Reason for Board's Action.* The school board's refusal to give any reason for its action leaves everyone, including Miss Eastman, the attorneys in the case, the courts and the general public in the dark. In vain do we search the record for cause.

Why should over 92,000 qualified electors of this state ap-

prove of Miss Eastman in November, 1944, and less than six months later four of the trustees of her school district voice their disapproval by voting "not to renew" her contract for the ensuing school year?

Could it be that it did not please the trustees for Miss Eastman to become the candidate of the particular party or for the particular public office? "A teacher in the public schools has the same privilege as any other citizen to become a candidate for public office and such candidacy is not ground for the cancellation of his contract * * *." 47 Am. Jur., p. 396, sec. 139.

Could it be that the trustees voted against Miss Eastman for the public office of state superintendent of public instruction and thereafter felt in duty bound to vote against her continued service in the public schools?

Could it be that the trustees withheld approval of the contracts of Violet M. Eastman and of Earl Fahland because such teachers were then members of the American Federation of Teachers or because they were then officers of the local teachers' union?

Does joining a teachers' union or holding office therein disqualify an otherwise qualified person from teaching in the public schools of Montana?

In short: What was the real reason that the four named trustees voted "not to renew" Violet Eastman's contract?

This question we put to defendants' counsel during the oral argument of this appeal and counsel replied: "There is nothing in the record to show. I asked my clients, the board, and they refused to tell me."

For seventeen years, continuously and consecutively, Violet M. Eastman taught in the public schools of the State of Montana. During this time the specific provisions of section 1079, Revised Codes of Montana of 1935, made it *the duty* of Miss Eastman, and of all public school teachers in the state, "to endeavor to impress on the minds of their pupils the principles of morality, truth, justice, and patriotism; to teach them to

avoid idleness, profanity, and falsehood; to instruct them in the principles of free government, and to train them up to a true comprehension of the rights, duties and dignity of American citizenship.'' There is not a scintilla of evidence in the record before us that during her long service as a teacher Violet M. Eastman has not consistently, fairly and honestly performed each and every duty imposed by section 1079, Revised Codes, supra.

Under such facts the law presumes that Miss Eastman's ''official duty has been regularly performed'' and ''that the law has been obeyed.'' Sec. 10606, subsections 15 and 33, Rev. Codes.

The law further provides that, unless controverted by other evidence, the jury (in this case the district judge) ''are bound to find according to the presumption.'' Sec. 10604, Rev. Codes. Accordingly, the trial judge and the justices of this court ''are bound to find according to the presumption (sec. 10604) that Violet M. Eastman regularly performed her official duty (sec. 10606, subsec. 15, Rev. Codes); ''that the law has been obeyed'' (sec. 10606, subsec. 33, Rev. Codes) and that, during the seven consecutive years she served the defendant school district as a teacher in its public schools, she endeavored to impress upon the minds of her pupils ''the principles of morality, truth, justice, and patriotism; * * * to instruct them in the principles of free government, and to train them up to a true comprehension of the rights, duties and dignity of American citizenship.''

What objection can there be to such instruction?

The summary and arbitrary manner in which, at a quietly held, unadvertised meeting of the public school trustees, it was sought to terminate Miss Eastman's continuing contract of employment by voting ''not to renew'' same without assigning or giving any reason therefor, has cast suspicion and distrust upon a highly-trained, capable and experienced teacher without giving her an opportunity to hear the charges against her, if any there were, or to face her accusers, or to defend herself or her reputation in any manner. Such despotic action on the

part of the board does not conform with the principles of truth, justice and of free government. Sec. 1079. Such tyrannical action wholly fails to measure up to "a true comprehension of the rights, duties and diginity of American citizenship." Sec. 1079. Public school trustees too must observe the principles of truth, justice and free government. They too must be trained up to a true comprehension of the rights, duties and diginity of American citizenship. The arbitrary action on the part of the board of trustees was uncalled for, unfair and unAmerican. It is the equivalent of revoking Miss Eastman's license to teach, earned only after long years of preparation and study and of depriving her of the tools and equipment with which she earns her livelihood.

*Specially Concurring Opinion.* Following the submission to my associates of the foregoing dissenting opinion, Mr. Justice Angstman has written a specially concurring opinion wherein is questioned our interpretation and construction of the teachers' tenure law (sec. 1075) rendering such law effective and affording tenure teachers in our public schools the security and protection provided for rather than giving to the law a construction which will deprive such teacher of such security and protection and thereby render the law nugatory and thus defeat its very purpose, namely, the maintenance of an adequate and competent teaching staff in the public schools of this state, free from political or arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction.

Throughout this opinion I have endeavored to point out the difference obtaining with respect to the contract, rights and employment of the tenure teacher and those of the probationary teacher. It is only the tenure teacher who comes within the provisions of section 1075. To the probationary teacher such statute has no application whatever. Nevertheless, both the majority and specially concurring opinions herein cite and rely upon the case of Volandri v. Taylor, 124 Cal. App. 356, 12 Pac. (2d) 462, which deals only with the rights of a *probationary*

teacher under the California law, and not with the rights and status of a *tenure* teacher. The opening paragraph in the Volandri opinion reads: ''This is an appeal from a peremptory writ of mandate which was issued to compel the appellants as trustees of a union high school district, to reinstate a *probationary teacher,* whom they attempted to discharge.'' (Emphasis mine.). We are not here concerned with the rights of a probationary teacher. Miss Eastman is a tenure teacher.

Certain dicta from Bourne v. Board of Education, 46 N. M. 310, 128 Pac. (2d) 733, 738, is quoted and relied upon but again, the case is not in point. It does not involve the rights of a teacher under a teachers' tenure law but concerns the status of a *nurse* employed in a public school. The law in question applied to ''each teacher or other employe certified as qualified to teach in the schools of the State.'' Laws 1941, c. 202, sec. 1. The court held that the nurse did not have the status of a teacher and the law did not apply to the nurse's contract of employment, saying ''she was not a 'teacher' nor one certified as qualified to teach in the sense those words and phrases are used in the statute, since she did not 'hold a teacher's certificate'.''

Here we have in Miss Eastman, a qualified teacher holding a teacher's life certificate, whose seven consecutive years of employment in the defendant school district entitle her to the security and protection intended and provided for in section 1075, Revised Codes.

The specially concurring opinion quotes certain obiter from the majority opinion prepared for the court by the writer in Smith v. School District No. 18, supra, on a question not there up for decision, knowing full well that such statements must be read in connection with the facts of the case there decided. Shields v. Shields, 115 Mont. 146, 139 Pac. (2d) 528; Tongue River & Yellowstone River Irrigation Dist. v. Hyslop, 109 Mont. 190, 96 Pac. (2d) 273; Gaines v. Van Demark, 106 Mont. 1, 74 Pac. (2d) 454; Shaffroth v. Lamere, 104 Mont. 175, 65 Pac. (2d) 610; State ex rel. Murray Hospital v. District Court,

102 Mont. 350, 57 Pac. (2d) 813; McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344; Connolly v. Harrell, 102 Mont. 295, 57 Pac. (2d) 781.

In Smith v. School District No. 18 supra, the school authorities attempted to circumvent the law and dispense with the services of a tenure teacher who for seven consecutive years had taught the 6th, 7th and 8th grades in the public school in the town of Valier and also instructed the school band, by a letter written in the month of August, 1941, assigning him to teach grades 1, 2, 5, 6 and 7 in an ungraded rural school known as the Bullhead school, situate about ten miles from the town of Valier. There were no accommodations at such school for appellant's family other than a one-room teacherage wholly inadequate and unsuitable to accommodate the teacher's family, consisting of his wife, mother and three minor children, all dependent upon him for their support. The teacher had never taught any grades below the 5th nor had he been trained to teach such grades. At the Bullhead school there was no band to instruct. The school authorities had given the tenure teacher's position in the Valier public school to someone else. In that case, this court held that the teacher was protected by the provisions of the teachers' tenure law, section 1075, Revised Codes, which "is not merely to insure teaching employment but it is also to insure to teachers who have held teaching positions for three or more consecutive years, security in the position, the grade or the status which they have thus attained." Thus did this court by its construction of the statute (sec. 1075) in the Smith case prevent a circumvention of its provisions and protect the tenure teacher, his status and contract from the unfair, arbitrary and humiliating action there attempted by the school authorities.

Mr. Justice Angstman's specially concurring opinion herein would resolve doubt in favor of Miss Eastman. Of two possible constructions it would adopt the one most favorable to Miss Eastman. It would resolve ambiguities in her favor. "The difficulty here," says the opinion, "is that the statute is plain

and unambiguous, and open to but one construction.'' So plain and unambiguous is the statute that in Miss Eastman's case, which is now before us, four of the five justices of the Supreme Court of Montana have labored long in four separate opinions in an endeavor to explain the meaning, purpose and application of the 58 ordinary and controlling words here involved, which read: ''After the election of any teacher * * * for the third consecutive year in any school district * * * such teacher * * * shall be deemed re-elected from year to year thereafter * * * unless the board of trustees shall * * * *on or before the first day of May give notice in writing to said teacher * * * that his services will not be required for the ensuing year.''* Sec. 1075. (Emphasis mine.)

In construing these 58 words employed in the statute, in the Smith case, supra, three of the members of this court gave to them one interpretation while two other members in a dissenting opinion contended for a wholly different construction.

In Moses v. School District No. 53, 107 Mont. 300, 86 Pac. (2d) 407, a majority of this court gave the words one interpretation, but Mr. Justice Ralph Anderson read and interpreted the law differently as is shown by his dissenting opinion therein. In the Moses case, supra, Mary Moses, a tenure teacher, had taught three consecutive years in the same school district. No notice was given her on or before the first day of May that her school would be abandoned or discontinued, for which reason her services would not be needed or required for the ensuing year. The board of trustees delayed until the month of August, at which late date, it notified Miss Moses that her school would not be opened that fall and that her services would not be required. By such delayed action Miss Moses was thrown out of employment when school opened, losing $360 which she would have earned under her contract for teaching. To recover this sum she brought an action which resulted in a judgment in her favor on the pleadings. It is apparent that in so ruling, the district judge interpreted the statute as requiring that notice in writing to the teacher be given ''on or

before the first day of May'' in order to effect a release or termination of her continuing contract with the defendant school district. On appeal to this court, however, a majority of the court, speaking through Mr. Justice Angstman, refused to hold the defendant school district liable for the $360 and ordered the case reversed, holding in effect, that the provisions of section 1075 afforded the teacher no protection from such action of the defendant school board and that the notice which it gave the teacher during the month of August, 1937, was as effective to relieve the school district from liability as if given ''on or before the first day of May,'' as is required by the statute. It should require no argument to show that a notice given in August does not conform to a requirement of the legislature that such notice be given ''on or before the first day of May.''

However, the construction adopted by the majority opinion in the Moses case, supra, removed the time requirement, while the construction here given in Miss Eastman's case removes from the statute the very cause and notice prescribed as a prerequisite to valid termination of the continuing contract of a tenure teacher.

Today we are facing a threatened breakdown of the American public school system. The teachers are the most vital element in that system. Capable and experienced teachers deserve the security and protection afforded by Montana's tenure law. The denial of that security and protection is another body-blow delivered to an already weakened system, on the strength of which depends the welfare of our children and the internal security of our nation.

For the foregoing reasons I dissent. I am of the opinion that the decision and judgment of the Hon. William R. Taylor, district judge presiding, is correct and that it should be affirmed.

Mr. Justice Metcalf (dissenting).

The majority opinion asserts that there are two controlling questions presented by this appeal. First, did the notice of

April 25, 1945, which was sent to the plaintiff by the defendant school board, substantially comply with the requirements of section 1075, Revised Codes of Montana of 1935, and second, are rough drafts of the minutes of a school board meeting, which were prepared by its secretary or by a stenographer employed by the board, in attendance at a meeting of the board, admissible to contradict the recitals of the official minute book of the board?

I cannot agree that the issues can be limited in this manner. The first question to be resolved is whether the defendant board had the power to issue the notice in question to the plaintiff. As the chief justice has pointed out, a school board is merely an administrative agency created by statute and invested with the limited powers expressly conferred. In order to determine the power invested in the board, we must look to the Acts of the legislature from which the board draws its authority.

Various rules have been laid down for the construction and interpretation of legislative Acts. The most frequent statement is that a statute, clear and unambiguous on its face need not and cannot be interpreted by a court. 2 Sutherland on Statutory Construction, 3rd Ed., sec. 4502. Mr. Justice Angstman's concurring opinion declares that here "the statute is plain and unambiguous." By such a statement he would foreclose further discussion. But a declaration that a statute is "plain and unambiguous" is evidence that the statute has been considered and that the Justice has reached a conclusion as to its meaning and construction. "In many instances this will be a proper construction but frequently it merely disguises the court's unwillingness to consider evidence other than the court's own impression of what the legislative intent is." 2 Sutherland on Statutory Construction, 3rd Ed., sec. 4503.

For example, section 1075 says that the school board on or before the first day of May must give notice to the teacher "that his services will not be required." In Roget's Thesaurus, synonyms for "require" are "need," "want," "desire." If "require" means "want" or "desire" it is open to one in-

terpretation. If it means "need" it is open to a different in-interpretation. Surely we cannot say that the statute is unambiguous when the construction of the words in the statute can lead to two different conclusions.

The task of the court is to arrive at the legislative meaning. In order to arrive at the meaning of the legislature we must determine the purpose of the Act. Southland Gasoline Co. v. Bayley, 319 U. S. 44, 47, 63 S. Ct. 917, 87 L. Ed. 1244. One of the principal functions of government is to provide an efficient educational system. The men who drafted the Montana Constitution recognized this by providing that: "It shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools." Art. XI, sec. 1, Const. of the state of Montana.

The public welfare demands that school children be protected in their right to a free educational system, under competent, qualified teachers. To this end the state has established and maintains normal schools for the purpose of training and qualifying teachers to efficiently serve in the public schools of the state. For many years public attention has been drawn to the lack of qualified, experienced teachers. Devoted, public-spirited individuals have been drawn away from the teaching profession to positions more remunerative and with greater security. Many teachers have abandoned the profession because of low incomes, unfair treatment and arbitrary dismissals. Not only was the school system handicapped by the withdrawal of these individuals but the state failed to receive an adequate return for the money expended in training and qualifying teachers. There was a legislative recognition that if those who entered the profession could be secure in their employment and devote their energies to increasing their skill and knowledge in educational fields, intelligent, able men and women would make the profession their life work. Teachers' tenure statutes and teachers' retirement Acts are some of the means adopted to render the profession more attractive. The purpose of granting tenure

then, is to protect a qualified teacher from discharge and dismissal for political whims or personal dislike. Teachers who render a social service of the highest order shall not be subject to dismissal or discharge after years of efficient service without good cause.

The legislature enacted section 1075 as a part of a comprehensive School Code for the regulation of schools, Section 801, Chapter 76 of the Laws of 1913, which later became section 1075, Revised Codes of Montana of 1935, was entitled by the legislature: "Tenure of Office of Teachers" and when this section was amended by Chapter 87 of the Laws of 1927, the legislature entitled the Act: "An Act to Amend Section 1075 of the Revised Codes of the State of Montana of 1921, Relating to the Tenure of Office of Teachers." Under our Constitution, section 23 of Article V, a title is an indispensable part of every statute and in ascertaining the intention of the legislature "where the title throws light on the meaning of the statute it is an available tool" for a construction and interpretation of the statute. 2 Sutherland on Statutory Construction, 3rd Ed., sec. 4802.

The legislature enacted a tenure law. They called it a tenure law. In construing such law we must look to the purpose sought to be achieved by the legislature and we must construe the law in order to protect the individuals for whose benefit the law was enacted. Under these rules of construction an analysis of section 1075 shows that after a teacher has been elected for the third consecutive year he receives a continuing contract for an indefinite period. He is "deemed re-elected from year to year thereafter" and, as Chief Justice Johnson said in State ex rel. Keeney v. Ayers, 108 Mont. 547, 554, 92 Pac. (2d) 306, "Reappointment after three years' service is reappointment after three years of service, whether it is a reappointment for one year or for twenty-five. It must, therefore, under the board's regulations, be 'deemed a permanent appointment.' " The teacher then, after the statutory probationary period, has

a continuing contract unless he is notified before the first day of May that ''his services will not be required.''

Keeping in mind the purpose of the Act, the provision in section 1075, Revised Codes of Montana 1935, that the ''board of trustees shall by majority vote of its members on or before the first day of May give notice in writing to said teacher or principal that he has been re-elected or that his services will not be required for the ensuing year;'' can only mean that no teacher will be needed to teach in the district the following year. The board is thus given the opportunity to consolidate schools or departments and reduce the number of teachers needed. But in order to do so the school board must plan in advance and give the teacher notice of such plan.

If the phrase ''his services will not be required'' is construed to mean that the board may refuse to rehire the teacher for trivial or undisclosed reasons and emphasis is placed upon the word ''his'' without regard to the reason for the Act or the other portions of the school law, then the Act is nullified, the will of the legislature ignored and the persons for whose benefit the legislation enacted are left in a worse position than they would have been had there been no legislation at all.

Mr. Chief Justice Adair has reviewed the decisions involving section 1075, Revised Codes 1935, since its enactment in 1913 and pointed out that the court has applied this section for the security and protection of the teachers in the thirty-four years that have elapsed since its enactment.

The one exception was Moses v. School District No. 53, Lincoln County, 107 Mont. 300, 86 Pac. (2d) 407. In that case a teacher who had taught for three consecutive years was not given the notice provided for by section 1075 and under the provisions of that section automatically was re-elected for the ensuing year. There were three schools in the district and during the month of August the school trustees decided to close one of the schools and transport the pupils to another, and therefore notified the teacher that her services would not be required. The school trustees contended that it had been a custom

to re-employ a teacher in April upon the condition that there would be a sufficient number of pupils to warrant the holding of the school and upon the understanding that if there were not a sufficient number of pupils the trustees could close the school and the contract of re-employment would be void. The teacher's contract further contained the provision: "It is mutually understood and agreed, that whenever the school shall be closed by order of the trustees on account of the prevalence of contagious or epidemic disease, or from any cause, or lack of attendance, the salary of said first party as teacher shall stop and this contract shall be void."

The majority of this court, speaking through Mr. Justice Angstman, held that the trustees had the right to decide in August to close a school and void a teacher's contract made in April. The court based its decision on section 1044, Revised Codes 1935, which gives the board of trustees authority to close a school when the enrollment falls below five pupils if the pupils can be cared for more economically in another school, and on section 1010, Revised Codes 1935, which permits the trustees to transport the pupils when they deem it for the best interests of the school. The court also relied on the provisions of the contract quoted above and permitted the school board to close the school, cancel the teacher's contract in August and leave her without a position at the beginning of the school year.

There was a strong dissent by Mr. Justice Ralph J. Anderson wherein he pointed out sections 1044, 1010 and 1075, Revised Codes 1935, could be given a construction giving them all effect, "as the board may determine at some time before the first of May that it will close the school for the ensuing year either under the provisions of section 1010 or 1044, or both, and thereupon by majority vote act and give the notice in accordance with section 1075. Any other construction leads to the destruction of section 1075, which is the last legislative declaration."

Mr. Justice Anderson also pointed out that, "A custom cannot vary the terms of, or operate to abrogate or repeal, a general

statute. (Citing cases.) Such a contract containing a provision contrary to a statute declaring the public policy of the state is invalid. (Citing cases.)'' Moses v. School Dist. No. 53, 107 Mont. 300, 308, 86 Pac. (2d) 407, 410.

Thus in the Moses case the majority opinion read out of the statute the requirement that a written notice be given the teacher on or before the first day of May. Today in the instant case the majority of the court, by judicial construction, has administered the coup de grace to section 1075 by reading out the balance of the statute. In these two cases the court has destroyed the security and protection afforded the teachers of the state of Montana by our tenure law and rendered the statute an empty shadow without substance.

I concur with the Chief Justice that the plain intention of the legislature in enacting section 1075 was to provide for a continuing contract for an indefinite period for teachers who had demonstrated their efficiency and qualifications after a three-year probationary period. Such teacher can only be dismissed under the provisions of section 1085 and after a hearing before the board. State ex rel. Howard v. Ireland, 114 Mont. 488, 138 Pac. (2d) 569.

Then in order to dispense with the services of a teacher under the provisions of section 1075 there must be a bona fide showing that the school board decided to discontinue the department in which the plaintiff was teaching so that for the year 1945-1946 no teacher would have been required for that position. In the absence of such a showing, in order to dismiss this teacher or any teacher who has served the requisite probationary period, the board must hold a hearing and find that the teacher is subject to dismissal for one of the causes set forth in section 1085. There is no showing in this case that any such hearing was held or that any of the causes enumerated in section 1085 are present. It is my conviction that the plaintiff has a continuing contract with the defendant school board, that under the facts shown by this record, the school board had no power or jurisdiction to notify her that they had decided "not

to renew'' her contract for the 1945-1946 school year, and that she should be reinstated as a teacher in the Helena public schools.

It has been suggested that in 1943, 1945 and in 1947, legislation relating to teachers' tenure failed of passage and the conclusion has been drawn that this is indicative of the legislative will to deny tenure to the teachers. The same argument was advanced in State v. Board of School Directors, 190 Wis. 570, 209 N. W. 683, 686, where the question was the intent of the legislature in providing a classification system for probationary teachers. There the court said: ''Appellants in this connection have called to our attention the fact of unsuccessful attempts made in the legislative sessions of 1923 and 1925 to provide' for a similar probationary period for teachers in other cities of the state, and urges this as an argument in support of their proposition of improper classification. *This fact, however, creates upon us just the contrary impression.* It may well indicate that the Legislature in those two sessions at least, they having failed on such occasions to repeal or offer to repeal the provisions challenged here affecting cities of the first class, were of the opinion which we are now expressing, viz. that there is a good and substantial basis for the classification that has been made and is now upheld.'' (Emphasis mine.)

I agree. If such irrelevant matter may be considered at all, the inference to be drawn is that the legislature believed the present law to be a tenure law, protecting the rights of the teachers in the security of their employment and did not wish to disturb it.

Rehearing denied May 29, 1947.